THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PETER AMFT, Defendant-Appellant.

First District (1st Division)   No. 81—735

Opinion filed September 20, 1982.

Julius Lucius Echeles and Caroline Jaffe, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Martin D. Reggi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

After a bench trial, defendant Peter Amft was found guilty of delivery of more than 30 grams of a substance containing cocaine and of possession of the same with intent to deliver. He was sentenced to six years in the Illinois Department of Corrections on the conviction for delivery only. Defendant appeals.

On appeal, defendant contends (1) the trial court erred in denying his motion to dismiss the indictment; (2) the trial court erred in denying his motion to suppress oral and written statements made after his arrest; (3) he was not proved guilty beyond a reasonable doubt; and (4) cocaine is not a narcotic substance and his sentence is therefore improper.

We affirm.

Prior to trial, a hearing was held on defendant's motion to dismiss the indictment and suppress oral and written statements. At the hearing on the motion to suppress, defendant testified that on August 7, 1979, at 11:30 p.m., he was apprehended in his apartment by Robert Johnson and other law enforcement agents. Johnson told defendant that if he cooperated, he would not be arrested. Defendant agreed to phone Donald Wilson and ask Wilson to deliver a large quantity of cocaine. When Wilson arrived at defendant's apartment, Wilson was ar-

rested. To defendant's knowledge, Wilson possessed narcotics.

Thereafter, defendant was taken to a police station for questioning. He was left in the custody of agent Robert Cerceo, who advised defendant that he was under arrest. Defendant told Cerceo · of the promises made by Johnson. Cerceo responded that Johnson had no authority to make promises of that nature. However, Cerceo promised defendant he would be released in the morning if he cooperated. Defendant then told Cerceo of people he knew from the past who were undoubtedly still actively involved in smuggling, buying, and selling drugs. Cerceo promised that charges against defendant and Wilson would be dropped if defendant gave Cerceo information on these people. Cerceo also agreed to arrange for defendant's release on his own recognizance. Defendant was placed in a cell alone.

At approximately 3 a.m. on August 8, 1979, defendant was led to a room to speak with Johnson and Cerceo. Defendant explained his past association with Louis Azurduy, a Miami resident, and Antol Garcia, a Minneapolis resident. The agents stated charges against defendant and Wilson would be withdrawn if defendant assisted in an investigation leading to the arrest of Azurduy and Garcia for a "multi-kilo" drug sale. The agents advised defendant of his right to counsel, but advised defendant not to retain an attorney because the attorney would advise defendant not to cooperate with the agents.

On the afternoon of August 8, defendant appeared in court for a bond hearing. He was not represented by counsel. The assistant State's Attorney requested that defendant be released on an "I" bond of $25,000. After the hearing, Johnson, Cerceo and defendant discussed getting Azurduy and Garcia to Chicago with large quantities of cocaine which defendant would buy with money supplied by the agents. The agents would pose as defendant's partners.

Thereafter, defendant arranged to meet Azurduy in Chicago. Defendant also traveled to Miami to meet Azurduy. All transportation charges for both Azurduy and defendant were paid by the agents. All phone calls and conversations were monitored by the agents with defendant's permission.

Defendant further testified that he appeared in court three or four times between September and November, 1979. Each time, an agent was present and requested a continuance. In November, he spoke with Agent Popadowski, who told defendant he had been indicted. Defendant was notified by letter to appear for arraignment on January 10, 1980. Defendant retained an attorney in January 1980.

Defendant identified a form which he signed at the police station at 2:45 a.m. on August 8, 1979. The document advised defendant of

his rights, including the right to counsel and stated that defendant waived these rights. Defendant also wrote a statement at 1:10 p.m. on August 8. In this statement, defendant described conversations he had with Lowell Murray regarding the sale of cocaine and admitted delivering cocaine to Murray on August 7, 1979. Defendant also stated that he had been advised of his rights and that the statement was made voluntarily. A supplementary statement was written by defendant on August 8 at 3:30 p.m. Again, defendant acknowledged each constitutional right and stated that no threats, promises, or coercion were used to force him to prepare the statement. Defendant testified that the agents told him to ignore these rights. Defendant also admitted reading and signing another document which stated, in part, that no agent could make promises or predictions to informants regarding the disposition of a case. Defendant testified that the agents told him this was a form the agents were forced to complete if defendant was to cooperate with them.

Agent Robert Johnson, called during the pretrial hearing as a witness by the State, testified that he read defendant his rights after he entered defendant's apartment. He arrested defendant and advised him that he was being charged with delivery of 500 grams of cocaine to Lowell Murray. Johnson never promised to drop this charge against defendant. He only advised defendant that if Don Wilson delivered more cocaine to defendant, defendant would not be charged with any crime pertaining to that specific delivery. Defendant was again advised of his rights at the police station. Defendant read the form and signed it. On the afternoon of August 8, defendant made a written statement after being advised of his rights. Johnson advised the assistant State's Attorney of defendant's cooperation in obtaining 1500 grams of cocaine from Lowell Murray. At the bond hearing, defendant asked for an "I" bond and the assistant State's Attorney did not object. Johnson denied offering defendant immunity or advising defendant against retaining an attorney.

Agent Cerceo testified that after defendant was brought to the police station, he gave defendant an advisement of rights form. Defendant read the form, stated he understood his rights, and signed the form. Defendant said he wanted to cooperate. Cerceo made no promises to defendant regarding prosecution of the offense, but only advised defendant that he would bring defendant's cooperation to the attention of the assistant State's Attorney for his consideration. Defendant provided two written statements. Cerceo witnessed defendant sign the form registering him as a cooperator with the department.

A hearing was also held on defendant's motion to suppress statements given after his arrest. Defendant adopted his testimony given at the aforementioned hearing. On brief direct and cross-examination, facts similar to those introduced at the prior hearing were adduced. Agents Johnson and Cerceo also testified during this hearing. Their testimony was also similar to that given at the prior hearing. In ruling on this motion to suppress, the trial court considered their prior testimony.

At trial, Tom Rogers, a regional Department of Public Safety narcotics agent, testified that on the afternoon of August 7, 1979, he flew from Phoenix, Arizona, to Chicago with Lowell Murray and Agent Randy Oden. When they arrived in Chicago, he and Oden went to Room 569 at the O'Hare Sheraton Hotel, where they met three other narcotics agents. Murray left the agents at the airport and arrived at the hotel at 10:30 p.m. Murray was carrying a brown camera case. He did not have the case on the airplane. Murray removed from the case a brown bag containing a mason jar. The jar was filled with white powder. A field test indicated the powder contained cocaine. Rogers phoned Agent John Popadowski who brought approximately $30,000 to Murray. Popadowski gave Murray the money and Murray was arrested. Agent Oden testified to substantially similar facts.

Agent Popadowski identified the camera case, the brown bag and the mason jar. He testified that on August 7, 1979, he met Murray in Room 569 of the O'Hare Sheraton Hotel. He tested the substance in the mason jar. The substance reacted positively for cocaine. Popadowski gave Murray $33,000. Thereafter Murray was arrested.

Robert Johnson testified that on August 7, 1979, he was assigned to a surveillance detail and attended a meeting with other agents on this evening. He was told that agents had arranged for the purchase of two kilograms of cocaine. Lowell Murray was to pick it up, return to a hotel room, and sell the cocaine to the agents. Johnson also received a description of Murray and the agents with whom he was traveling.

Johnson went to the airport and followed Murray and the agents from the gate to the baggage area. Murray, carrying only a cane, left the baggage area alone and entered a cab. Johnson followed the cab. When Murray left the cab, Johnson parked his car and followed Murray on foot. Murray stopped at 1523 North Dearborn where a man whom Johnson identified as defendant came onto the porch and sat with Murray. Later, Johnson followed a cab to the O'Hare Sheraton and saw Murray exit the cab carrying a brown camera case. He was notified by police radio that Murray had been arrested in the hotel for

delivery of 500 grams of cocaine and that the cocaine had been carried in a jar in a camera case.

At approximately 12:40 a.m. on August 8, 1979, Johnson returned to 1523 North Dearborn. Another agent rang the doorbell and defendant came to the door. Johnson identified himself as a narcotics agent and asked to speak to defendant. Defendant invited Johnson into his apartment. When Johnson was in the apartment, he read defendant his rights. The remainder of Johnson's testimony was similar to that adduced during the hearing on the motion to dismiss.

Defendant presented the testimony of Donald Wilson. Wilson corroborated defendant's testimony as to defendant's call to Wilson about delivering more cocaine. Wilson also testified that the charges against him were dismissed on motion of the State because of defendant's cooperation.

After trial, additional evidence was introduced on defendant's second motion to quash the arrest and suppress statements. Defendant's motion alleged that the arrest was not based on probable cause and that the statements were the fruits of an illegal arrest. Defendant testified that he lived in the apartment with his girlfriend. His name did not appear on the mailbox or doorbell. He answered the door when he heard banging. He opened the door and several men entered the hallway.

The trial court denied defendant's motion to quash the arrest and suppress statements. Defendant was found guilty of delivery of more than 30 grams of a substance containing cocaine and of possession of this amount with intent to deliver. He was sentenced to the minimum term of six years for delivery.

First, defendant contends that the promises not to prosecute made by the agents resulted in a denial of his right to counsel. He alternatively argues that for this reason the indictment should have been dismissed or that the oral and written statements made after his arrest should have been suppressed.

■ The dismissal of an indictment is generally not the remedy for infringement of the right to counsel since the accused's rights must be balanced with society's interest in the administration of criminal justice. (*United States v. Morrison* (1981), 449 U.S. 361, 66 L. Ed. 2d 564, 101 S. Ct. 665.) Normally the remedy is to suppress evidence obtained in violation of the right or to order a new trial if evidence is wrongfully admitted. (*Morrison,* citing *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; and *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84

S. Ct. 1199.) Therefore, we find no error in the denial of defendant's motion to dismiss the indictment.

We now turn to the question of whether defendant's oral and written statements should have been suppressed. Defendant maintains that the incriminating statements were made in reliance on the agents' promises not to prosecute if defendant cooperated in other drug investigations and that the agents' promises induced him to forego representation by counsel. He cites the three-month delay between his arrest and indictment to support his contention that promises were made to him.

Defendant's statements were made in the course of custodial interrogation and therefore the right to counsel had attached. (*Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758.) Statements made by a suspect during custodial interrogation are admissible only if the suspect voluntarily waived his *Miranda* rights prior to making the statements. (*People v. Krueger* (1980), 82 Ill. 2d 305, 412 N.E.2d 537, *cert denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 390, 101 S. Ct. 3008.) If defendant is adequately advised of his rights yet fails to request counsel, no right is violated. (*People v. Redmond* (1980), 85 Ill. App. 3d 599, 407 N.E.2d 132.) Whether there has been a waiver of rights is a matter to be determined by the trial court whose decision will not be reversed absent an abuse of discretion. *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161.

The record contains considerable evidence that defendant was adequately advised of his rights on a number of occasions. The agents testified that defendant was read his rights at his residence at the time of his arrest and at the police station. Each time defendant acknowledged and stated he understood his rights. Also, defendant identified the waiver of rights form signed by him and the handwritten statements wherein he acknowledged his rights. Absent from the record is any evidence that defendant asked to confer with counsel at any stage of the interrogation. From these facts, we find that defendant voluntarily waived his right to counsel.

Additionally, we cannot say with much certainty that the waiver was induced by alleged promises made by the agents. Undeniably, the evidence in this case conflicts on this point. In such circumstances, it is the duty of the trial court to assess the credibility of the witnesses.

■ There is sufficient evidence in the record supporting the conclusion that no promises were made by the agents. Not only did agents Johnson and Cerceo deny this fact, but defendant signed a document advising him that the agents had no authority to make predictions regarding the outcome of a case. We add that the delay be-

tween defendant's arrest and indictment does not, in this case, indicate that promises were made. In narcotics cases, a certain amount of preindictment delay is reasonable and sometimes necessary to effectively investigate and break the chain of narcotics distribution. (*People v. Allen* (1967), 38 Ill. 2d 26, 230 N.E.2d 170.) In conclusion, we find that the trial court did not err in denying defendant's motion to suppress.

Second, defendant contends his fourth amendment rights were violated when the agents arrested him without probable cause, had no warrant, and forcibly entered his home.

Probable cause to arrest exists if a reasonable and prudent person in possession of knowledge which the arresting officer has would believe that the person arrested had committed a crime. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Whether probable cause exists depend on the totality of facts and circumstances known to the officers when the arrest is made. (*Walls*, citing *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356, and *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) The trial court's finding regarding probable cause will not be disturbed unless manifestly erroneous. *People v. Thompson* (1981), 93 Ill. App. 3d 995, 418 N.E.2d 112.

Our review of the record indicates that the agents had probable cause to arrest defendant. Murray had been under surveillance from the time he left the airport until he arrived at defendant's residence. Murray was carrying only a cane, but when he returned to the hotel, he carried a camera case. The arresting agents learned that the case contained a jar of cocaine. The reasonable conclusion was that defendant delivered the cocaine to Murray. Thus, probable cause was established.

Furthermore, the entry into defendant's residence was consensual. Agent Johnson testified that defendant voluntarily admitted the agents into the building and offered to speak to the agents in his apartment. Because defendant's arrest was based on probable cause and the agents' entry was consensual, defendant's rights were not violated and the trial court did not err in denying the motion to suppress.

Third, defendant contends he was not proved guilty of possession or delivery of a controlled substance beyond a reasonable doubt. We have reviewed the record thoroughly and find that the evidence, including defendant's admissions in his written statements, that he delivered 500 grams of cocaine to Lowell Murray, supports the trial court's findings of guilt.

Fourth, defendant contends that cocaine is not a narcotic

drug and that, therefore, the sentence imposed under section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2)) may not constitutionally stand. However, in *People v. McCarty* (1981), 86 Ill. 2d 247, 427 N.E.2d 147, the Supreme Court held that cocaine may be classified as a Schedule II narcotic drug for penalty purposes even though it is not botanically, medically, or pharmacologically defined as such. The court found that the classification scheme served a legitimate legislative purpose of penalizing delivery of substances according to their potential for abuse and harm to society. We, therefore, find no error in sentencing.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.