THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ROBERT JOHN BAJT, Defendant-Appellee.

Second District No. 82—394

Opinion filed March 15, 1983.

Dallas Ingemunson, State's Attorney, of Yorkville (Jean M. Fletcher, Assistant State's Attorney, and Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Raymond T. Brasel, of Batavia, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The State appeals from an order of the circuit court of Kendall County which granted the motion of the defendant, Robert Bajt, to dismiss the charges against him. The trial court's ruling was based on its conclusion that the police officer did not have probable cause to stop the defendant's vehicle.

The defendant was charged with the offenses of driving under the influence of alcohol (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)) and failure to yield to an emergency vehicle (Ill. Rev. Stat. 1981, ch. 95½, par. 11—907(a)) after being stopped by a Yorkville police officer in relation to an apparent violation of a municipal ordinance prohibiting the making of a U-turn.

The defendant filed a "motion to dismiss" the two charges on the ground that the police officer did not have probable cause to arrest him. The motion to dismiss alleged, in essence, that a U-turn was not prohibited at the point where the incident in question occurred because no sign was posted north of that area warning the defendant that a U-turn was proscribed in the zone where he turned his vehicle. The motion also stated that although a sign prohibiting the making of a U-turn was posted south of the location where the defendant executed a turn, that sign did not apply to or control traffic at the point of the incident. Lastly, the defendant's motion alleged that the sign mentioned above was not visible at night from the point of the incident due to darkness.

Section VI of the village of Yorkville's traffic ordinance prohibits the making of a U-turn on Bridge Street (also known as Route 47) between a point 50 feet south of the intersection of Route 47 and Van Emmon Street and a point 50 feet north of the intersection of Route 47 and Main Street. Section VII of the same ordinance states that the municipality shall erect and maintain proper signs prohibiting the

making of U-turns in those places where U-turns are proscribed and shall place the "No U-turn" signs in locations where motorists and bicyclists can easily view them.

As the defendant correctly points out, a driver who is traveling south on Route 47 and approaching the downtown area of Yorkville from the north crosses Main Street, River Street, and then the Fox River. The first vehicular artery which the motorist encounters south of the river is Hydraulic Street, which contains a railroad track. One block further south of Hydraulic Street is Van Emmon Street. The ordinance prohibits U-turns on Route 47 between Main and Van Emmon Streets.

At the hearing held on the defendant's motion, Glen Calvert, a police officer, testified that he was proceeding northbound on Route 47 and was located at the intersection of Van Emmon Street and Route 47 at approximately 10 p.m. on January 24, 1982. At that time he observed a car execute a U-turn maneuver on Route 47 in front of Whiskers Tap and proceed north on Route 47. The officer accelerated, activated his overhead red lights, and caught up with the automobile, which the defendant was driving. Officer Calvert stopped the vehicle to warn the driver "about U-turns downtown."

The officer further related that a sign prohibiting the making of U-turns was located at the southwest corner of the intersection of Hydraulic Street and Route 47, that is, just south of the railroad track. He estimated that the sign was 40 to 50 feet south of the place he first observed the defendant's vehicle. Officer Calvert stated that the sign in question was the only sign he was aware of that was posted on Route 47 for southbound traffic. The officer also identified People's Exhibits Nos. 1-8 as photographs he took from a position in front of Whiskers Tap. Those photographs reveal that Whiskers Tap is located on the west side of Route 47, a short distance north of Hydraulic Street and the railroad track.

The trial court granted the defendant's motion to dismiss. In reaching its decision, the trial court noted that the village's ordinance required that "No U-turn" signs be posted at both entrances to the area in which U-turns were prohibited. The court stated that Officer Calvert knew that only one sign was posted for southbound traffic (but not at the entrance to the prohibited zone) and that the officer, therefore, was aware that the village had not properly posted the signs required by the ordinance, thereby distinguishing this case from *Michigan v. DeFillippo* (1979), 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627. Then the court noted that the defendant was charged with the instant offenses as a result of being stopped for the U-turn mat-

ter. Concluding that the officer did not have probable cause to make the initial stop, the court below granted the defendant's motion to dismiss.

The question the State poses for review is whether the trial court erred in granting the defendant's motion to dismiss, the practical effects of which were to quash his arrests for the instant charges and suppress any evidence which may have been seized as a result of those arrests.

■ The State notes that the defendant improperly styled his motion as one to dismiss the cause when he sought to challenge the officer's basis for stopping his vehicle and arresting him. Because the propriety of an arrest is not specified as a proper ground for dismissing a prosecution (see Ill. Rev. Stat. 1981, ch. 38, par. 114—1), the motion should have been denominated as one to quash the arrest and to suppress any evidence seized as a result thereof (see Ill. Rev. Stat. 1981, ch. 38, par. 114—12).

Rather than arguing that this misnomer in the form of the motion mandates reversal, the State has elected to proceed as if the trial court had, in fact, entered an order quashing the arrests and suppressing any evidence derived therefrom. Therefore we, too, will disregard the pleading defect and treat (1) the defendant's motion as one seeking to quash and suppress and (2) the trial court's order as quashing the arrest and suppressing any evidence which was illegally obtained.

■ It is axiomatic that probable cause to arrest exists in cases where the facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that an offense has been committed and that the person arrested was the offender. (*People v. Creach* (1980), 79 Ill. 2d 96, 101, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564; *People v. Amft* (1982), 109 Ill. App. 3d 619, 626; see Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c).) Whether probable cause for an arrest exists in a specific instance depends upon the totality of the facts and circumstances known to the officer when the arrest was made. (*People v. Creach* (1980), 79 Ill. 2d 96, 102; *People v. Amft* (1982), 109 Ill. App. 3d 619, 626.) In deciding the question of probable cause, the courts are not disposed to be unduly technical but rather deal with probabilities; the determination of probable cause must be based on the factual and practical considerations of everyday life in which reasonable men, not legal technicians, act. (*People v. Creach* (1980), 79 Ill. 2d 96, 102.) Of course, a lesser standard is required to support a finding of probable cause than would be necessary for a conviction. (*People v. McNair*

(1981), 102 Ill. App. 3d 322, 328.) In other words, the validity of the arrest does not depend on whether the suspect actually committed a crime. (*Michigan v. DeFillippo* (1979), 443 U.S. 31, 36, 61 L. Ed. 2d 343, 349, 99 S. Ct. 2627, 2631.) With respect to a motion to quash an arrest for the alleged lack of probable cause, the burden of proof rests upon the defendant (*People v. Jodie* (1979), 79 Ill. App. 3d 348, 357; *People v. Logan* (1979), 78 Ill. App. 3d 646, 649), and the court's finding relative to the question of probable cause will not be disturbed on appeal unless manifestly erroneous. *People v. Amft* (1982), 109 Ill. App. 3d 619, 626.

■ In the present case, the uncontradicted evidence established that the defendant executed a U-turn on Route 47 in front of Whiskers Tap in an area in which the village, by municipal ordinance, had prohibited the making of such turns. Officer Calvert saw the defendant make the proscribed turn and gave chase in order to warn the defendant that U-turns were not permitted downtown. We conclude that the totality of the facts and circumstances known to the arresting officer were sufficient to cause a person of reasonable caution to believe that an offense had been committed and that the defendant was the offender.

The trial judge, apparently believing that the ordinance mandated the placement of the proscriptive signs at both entrances to the no-U-turn area, noted that the village had not located the mandated signs at the required places. He also stated that Officer Calvert was aware that the only sign posted for southbound traffic on Route 47 was not located at the entrance to the area in which U-turns were banned. In attempting to distinguish the present case from *Michigan v. DeFillippo* (1979), 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627, the court below emphasized that "the officer knew that the [required] postings had not been made," thereby, by implication, indicating the court's belief that Officer Calvert was aware that the municipal ordinance was invalid as a result of the village's failure to comply with the posting requirements.

We note initially that the ordinance in question only requires that the signs prohibiting the making of U-turns be located in such a manner that motorists can see them easily. Even assuming for the sake of argument, however, that the trial court correctly determined that the signs were not posted properly, that fact alone does not support the quashing of the defendant's arrest for the instant charges or the suppression of any evidence. We believe that the trial court's attempt to distinguish *Michigan v. DeFillippo* (1979), 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627, from the facts of the present case must fail. We

are of the opinion that the officer did not lack probable cause to believe that the conduct he observed constituted a violation of law simply because he should have known that the ordinance in question was invalid and would be declared defective by a court of law.

In *Michigan v. DeFillippo* (1979), 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627, the defendant was arrested for refusing to identify himself to a police officer, a misdemeanor offense under a Detroit ordinance. The arresting officer conducted a search of the accused's person incident to the arrest and discovered a controlled substance; the defendant was charged with a drug offense but not with a violation of the municipal ordinance. In *DeFillippo*, the United States Supreme Court addressed the question whether an arrest made in good-faith reliance on an ordinance, which at the time had not been declared unconstitutional, was valid regardless of a subsequent judicial determination of the ordinance's unconstitutionality.

The *DeFillippo* court concluded that the fact that the Detroit ordinance was determined to be invalid after the arrest had taken place did not undermine the validity of the arrest made for violation of that ordinance and, further, that the evidence discovered in the subsequent search of the defendant should not have been suppressed. (443 U.S. 31, 40, 61 L. Ed. 2d 343, 351, 99 S. Ct. 2627, 2633.) In reaching its decision, the court stressed that since there was no controlling precedent indicating that the ordinance was unconstitutional, the ordinance was presumptively valid at the time the officer observed the conduct in question. Continuing, the court made the following comments, which apply with equal force to the case now before this court:

"A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional.

Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." 443 U.S. 31, 37-38, 61 L. Ed. 2d 343, 350, 99 S. Ct. 2627, 2632.

The high court in *Michigan v. DeFillippo* (1979), 443 U.S. 31, 39,

61 L. Ed. 2d 343, 351, 99 S. Ct. 2627, 2633, emphasized that the statute in question there was not of a type which purported to authorize arrests and searches without probable cause and without a valid warrant (see, *e.g., Ybarra v. Illinois* (1979), 444 U.S. 85, 96 n.11, 62 L. Ed. 2d 238, 248-49 n.11, 100 S. Ct. 338, 345 n.11). Other recent Federal cases have followed the rationale employed and the result reached in *Michigan v. DeFillippo.* See, *e.g., Holifield v. Davis* (11th Cir. 1981), 662 F.2d 710, 711, *cert. denied* (1982), 455 U.S. 1026, 72 L. Ed. 2d 147, 102 S. Ct. 1730; *United States v. Pappas* (1st Cir. 1979), 613 F.2d 324, 330-31.

The decisions of this State have also recognized in a somewhat analogous situation that the subsequent invalidation of an ordinance which was the basis of the arrest will not render unreasonable the initial arrest and accompanying search. (*People v. Sobol* (1975), 26 Ill. App. 3d 303, 304-05.) That statement of the law was reaffirmed more recently in *People v. Decuir* (1980), 84 Ill. App. 3d 531, 532. Professor LaFave's exhaustive treatise on the fourth amendment also discusses this issue in considerable detail. 1 W. LaFave, Search and Seizure §3.2(f), at 493 (1978); at 79 (1982 Supp.).

██ █ The trial court, in distinguishing *Michigan v. DeFillippo,* remarked that, unlike that case, here the officer was aware that the ordinance prohibiting the making of U-turns was invalid or unenforceable because he knew the signs proscribing the turns were not posted in the proper locations. There is no testimony or other evidence in the record which establishes or even suggests that the officer knew or suspected that the ordinance in question was invalid. To the contrary, his testimony was that he stopped the defendant to warn him about the prohibition of U-turns in the downtown area is some indication that Officer Calvert believed he was enforcing a valid ordinance. Furthermore, the ordinance in issue should be accorded a presumption of validity because there is no evidence that it had been invalidated prior to the time Officer Calvert stopped the defendant's automobile. Secondly, the trial court's logic flies in the face of the Supreme Court's analysis in *DeFillippo,* where the court stressed that, given the fact it is a police officer's duty to enforce a law until it is declared unconstitutional or otherwise invalidated, it was incongruous to require a law enforcement officer to speculate or predict that a presumptively valid statute would be found invalid and to expect an officer to forego stopping or arresting a suspect for that reason.

 █ In sum, the fact that the court below may have determined, at least by implication, that the ordinance in question was defective or invalid did not render unconstitutional Officer Calvert's

action in stopping the defendant's vehicle to warn him of the prohibition against executing U-turns. (See *Michigan v. DeFillippo* (1979), 443 U.S. 31, 40, 61 L. Ed. 2d 343, 351, 99 S. Ct. 2627, 2633; *Holifield v. Davis* (11th Cir. 1981), 662 F.2d 710, 711, *cert. denied* (1982), 455 U.S. 1026, 72 L. Ed. 2d 147, 102 S. Ct. 1730; *United States v. Pappas* (1st Cir. 1979), 613 F.2d 324, 330-31; *People v. Sobol* (1975), 26 Ill. App. 3d 303, 304-05.) There is no doubt that, based on the officer's observations, Calvert had probable cause to arrest the defendant for violation of the ordinance proscribing U-turns. It naturally follows that even though the officer did not arrest the defendant for making a U-turn, he had sufficient grounds to stop the automobile. (See *People v. Grice* (1980), 87 Ill. App. 3d 718, 722, *cert. denied* (1981), 450 U.S. 1003, 68 L. Ed. 2d 207, 101 S. Ct. 1714.) Since the initial investigatory stop was proper, it is clear that, based on the limited evidentiary record before it, the trial court erred in quashing the arrests for the offenses of driving while under the influence of alcohol and for failure to yield to an emergency vehicle.

For the reasons expressed, the judgment of the circuit court of Kendall County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LINDBERG and NASH, JJ., concur.