THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD STACHELEK, Defendant-Appellant.

First District (3rd Division) No. 84—2741

Opinion filed May 21, 1986.—Rehearing denied July 22, 1986.

394

George Patrick Lynch, Ltd., of Chicago (M. Jacqueline Walther, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Susan Davis Brunner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant Reginald Stachelek was indicted for murder. After a jury trial, defendant was convicted of murder and was sentenced to a term of 35 years. On appeal, defendant contends that the trial court erred in denying his motion to quash his arrest because it was made without probable cause, erred in not suppressing his statements as being involuntary and the product of an illegal arrest, erred in admitting bloodstained clothes as evidence, and erred in refusing to instruct the jury on the defense of withdrawal. He further contends that he was denied effective assistance of counsel.

On January 25, 1983, at 2:30 a.m., James Garcia was found with multiple stab wounds on Western Avenue in Chicago. He later died of the wounds. Police officers on routine patrol saw two men running from the scene. They caught and arrested Victor Lopez. At 3:30 a.m., Officers Leuser and others were assigned to the case. At 4 a.m., they interviewed Lopez and discovered where the stabbing had occurred and that several other people were involved. Between 4:45 and 5 a.m., a female identifying herself as Reginald Stachelek's sister telephoned the police station and requested information about her brother's arrest in connection with the stabbing on Western Avenue. The officer told her that no one by that name was in custody. The officer then told Leuser about the telephone call and he in turn informed Officers West, Lahm and Dorich.

The officers proceeded to the apartment building where the stabbing took place and canvassed the building for witnesses. Officer West testified that an interview with a tenant, Rosa Montes, revealed that shortly after 2 a.m., Montes heard someone banging on her door shouting "Call the police. They are going to kill us." Montes opened the door and saw a stranger clutching his chest and yelling. Behind him were three or four persons including one she recognized as a neighborhood resident known as "Nervous" or "Nervy." The lights suddenly went off and Montes slammed her door. She ran to the window and saw four people, including Nervy, run from the building. Officer West testified further that Montes described Nervy as a black African, 17 or 18 years old, 5 feet 6 or 7 inches tall, with straight, black hair. Montes also told the officers where Nervy lived.

At approximately 6 a.m., Officers West, Lahm and Dorich went to Nervy's apartment. Hassan Khan opened the door, and the officers identified themselves and stated that they were investigating the knifing. The police then saw a man walk up behind Hassan Khan. The officers recognized Nooir (Nervy) Khan from Montes' description. When asked his name, the man responded "Nervy Khan." The officers en-

tered the apartment and placed Nervy under arrest.

Officer West heard a noise from the rear of the apartment, but Nervy stated that no one else was present. Fearing for his safety, West went to investigate the noise. The other officers accompanied Hassan and Nervy to the rear of the apartment. There they found defendant arising from a bed. He identified himself as Reginald Stachelek. West noticed that defendant's trousers and shoes were stained with blood.

Defendant, who was 15 years old, was taken to the police station shortly before 7 a.m. He waited in an interview room until approximately 8:30 a.m., when a youth officer arrived. West informed defendant of his *Miranda* rights, and that a juvenile could be tried as an adult. Defendant acknowledged that he understood, but still wished to make a statement. Defendant stated that he, Nervy, Victor Lopez, John Martinez and John Aquino beat Garcia as punishment for Garcia's expressing the desire to become a member of a different gang. Defendant subsequently warned Garcia that Aquino and Martinez were going to do something worse to him. Garcia began beating on the door of an apartment, and Martinez pulled out a knife and stabbed Garcia repeatedly. Defendant ran down the stairs. Garcia also ran into the street, chased by Aquino and Lopez.

At approximately 1 p.m. that day, West and the youth officer spoke with defendant, first reminding him of his *Miranda* rights. The officers told defendant that the other participants in the stabbing had told different stories. Defendant made no statement.

At 3:30 p.m. on the same day, police officers and an assistant State's Attorney again spoke with defendant, first reading him his *Miranda* rights. Defendant repeated the same statement he had given at 8:30 a.m. Defendant was again reminded that the other participants in the crime had given different accounts. Defendant then changed his statement, and also made a written statement at 4:30 p.m., before which his *Miranda* rights were repeated. In his statement, defendant repeated substantially the same facts told earlier but stated that he, not Martinez, had stabbed Garcia 10 to 15 times.

Subsequently, the court conducted a hearing on defendant's motion to quash his arrest and to suppress both his statement and his bloodstained clothing. At the hearing, the officers stated that defendant was advised of his *Miranda* rights before each statement was taken, and that defendant indicated that he understood those rights and wished to speak to the officers. The State's witnesses also testified that defendant was not beaten or mistreated at any time, that defendant did not appear to be under the influence of alcohol or

drugs, and that defendant did not ask to make a telephone call. Defendant's written statement included an acknowledgement that he had been treated well, that he had been given cigarettes and food, and that he was not under the influence of drugs or alcohol.

Defendant testified at the hearing that at the time of his arrest an officer stomped on his foot and slapped him. He did not report this injury to the doctor who examined him at the police station. At the 8:30 a.m. interview he had told the police that he had feared for his safety, and they assured him that if he gave information about the crime his identity would be protected. Despite these promises, defendant was taken in a squad car to point out the homes of the others involved in the crime, and Martinez and Aquino were brought back to the police station in the same car with defendant. Defendant also stated that the police refused his requests to make telephone calls from the Khan residence and the station.

Rosa Montes testified for defendant at the hearing. She stated that she only saw one man when she opened her door on the night in question, and that she did not remember telling the officers three or four men were present. She remembered generally describing Nervy to the police, but not specifically telling them Nervy was 17 or 18 years old, had a stocky build and medium black complexion.

Assistant State's Attorney Gordon Greenberg testified that he visited Rosa Montes on February 17, 1983, at 11 a.m. At that time, Montes told Greenberg that her earlier statements to the police were true.

The trial court found that probable cause existed to arrest defendant. The court also found that all of the statements made by defendant were voluntary. The court stated that it took into consideration the fact that defendant had experience with the police. The court, however, found deficiencies in the *Miranda* warnings given at 8:30 a.m. and therefore suppressed the statements made as a result of that interview. The *Miranda* warnings given at 3:30 and 4:30 p.m. were found to be proper and statements made at those interviews were not suppressed.

At trial, defendant testified that he had been forced to join the gang at age 10, and that Garcia was his friend. On the night of the stabbing, Garcia was being beaten as a gang punishment, but defendant did not participate. Later, he wanted to help Garcia, and told Garcia he thought the others were planning on seriously injuring Garcia. Defendant remained on the landing of the apartment building stairway because he did not wish to be part of the beating. Martinez subsequently stabbed Garcia. Garcia ran down the stairs, bumping into

defendant on the landing. Later, Martinez told defendant that, if they were caught, defendant should take the blame because he was the youngest. If he did not do so, Martinez would kill defendant or his family. Defendant testified further that he originally identified Martinez as the killer but later in the day, after he rode with Aquino and Martinez in the police car, defendant's fear of Martinez' earlier threats caused him to change his statement and take the blame for the murder. On cross-examination, defendant testified that his gang was an enemy of the gang which the victim wished to join. Defendant interpreted various gang symbols that showed this rivalry. Defendant also stated that his brother had previously encountered trouble with the rival gang. Defendant further testified that he had never been given *Miranda* warnings prior to January 25, 1983. Defense counsel stipulated that defendant had received *Miranda* warnings on two prior occasions.

Greg Owens, a former assistant State's Attorney, testified for defendant that older gang members often force younger members to take responsibility for crimes because the court will be more lenient with young people. Owens also testified that gangs retaliate against members for helping the police. Owens testified that a "violation," or punishment, could be death and that a member's intention to switch to a rival gang would be considered sufficient motive for killing that member.

At the trial, the bloodstained clothing of defendant, Martinez, Aquino, Khan and Lopez was admitted into evidence. The victim had type A/MN blood. A police crime laboratory microanalyst testified that the bloodstains on defendant's jacket were type A, which was consistent with A/MN blood type. The bloodstains on defendant's pants were type 0. The bloodstains on defendant's gym shoes and on some of the other clothing were human, but were of insufficient quantity to allow accurate typing. The various bloodstains on the others' clothing were types A, AB, AO, and B. The clothing was admitted into evidence without objection.

■■■ Defendant first contends that the court erred in denying the motion to quash his arrest because no probable cause existed for the warrantless arrest. A person may be arrested without a warrant when a police officer has reasonable grounds to believe he has committed a crime. (Ill. Rev. Stat. 1983, ch. 38, par. 107—2(1)(c).) The statutory standard is the equivalent of the constitutional requirement of probable cause. (U.S. Const., amend. IV; Ill. Const. 1970, art. 1, sec. 6; *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) The test is whether a reasonable person, having the knowledge possessed

by the officer at the time of the arrest, would believe that defendant committed the offense. (*People v. Tisler* (1981), 103 Ill. 2d 226, 469 N.E.2d 147; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) The court should focus on probabilities and should not be unduly technical in deciding whether probable cause existed. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 460 N.E.2d 60.) The officer's actions in making the arrest are to be judged by the practical considerations of everyday life, keeping in mind the officer's underlying responsibility to prevent crime, to apprehend criminals, and to act quickly in appraising data. (*People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 460 N.E.2d 60; *People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547.) On a motion to quash an arrest, the burden of proof rests upon the defendant; but once he has made a *prima facie* showing of the lack of probable cause, the burden of going forward shifts to the State. (*People v. Garcia* (1981), 94 Ill. App. 3d 940, 419 N.E.2d 542.) The trial court's finding with regard to the motion to quash an arrest will not be disturbed on appeal absent manifest error. *People v. Bajt* (1983), 113 Ill. App. 3d 459, 447 N.E.2d 432.

The officers' judgment that probable cause existed to arrest defendant resulted from a chain of events which occurred rapidly during the first few hours of the police investigation. At approximately 4 a.m., Lopez informed the police that several other persons had participated in the crime. At 5 a.m., only 2½ hours after the stabbing occurred, defendant's sister telephoned the police, identified herself and the location of the crime, and informed the police that she believed her brother was being held for the crime. Shortly before 6 a.m., Rosa Montes informed the police that Nervy Khan was one of several persons seen running from her building as the stabbing and beating took place. At 6:15 a.m., defendant was found by the police in Nervy's apartment, with what appeared to be blood on his clothing. Defendant identified himself as Reginald Stachelek, the name which the officers knew had been linked to the crime earlier.

Defendant attacks the State's case by isolating each of these facts from the others. Any one of these facts standing alone, or even a combination of any two facts, might not establish probable cause. (See *People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 460 N.E.2d 60.) Instead, we look to the totality of circumstances known to the officers at the time of the arrest. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Krogh* (1984), 123 Ill. App. 3d 220, 462 N.E.2d 790; *People v. Summers* (1981), 100 Ill. App. 3d 170, 426 N.E.2d 937.) Relevant circumstances can include

the closeness in geographic location and time between the crime and the arrest. (*People v. Jones* (1984), 128 Ill. App. 3d 842, 471 N.E.2d 590.) Here, defendant was arrested in an apartment at the end of the block where the murder had occurred only a few hours earlier. Another relevant factor in determining whether the officers acted properly is the seriousness and the violent nature of the offense. (See *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31.) Here, the violent nature of the fatal gang-related "punishment" indicates the serious and violent nature of the offense.

■■ ■ Another relevant factor is an officer's viewing of what appear to be bloodstains on the person's clothing. (*People v. Kraman* (1981), 96 Ill. App. 3d 390, 421 N.E.2d 346.) Defendant argues that the police officers did not include information regarding the bloodstains in their initial written report and did not demand that defendant immediately remove the clothing in order to preserve it for evidence. At the trial, however, the officers testified that they observed the stains, which appeared to be blood, prior to arresting defendant. The test for whether probable cause to arrest defendant existed depends upon the knowledge possessed by the officer at the time of the arrest. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) While the absence of this information from the police reports might raise a question of credibility, the trial court resolved this question adversely to defendant and we will not substitute our judgment for that of the trier of fact in determining the credibility of witnesses absent palpable error. *People v. Weathers* (1974), 18 Ill. App. 3d 338, 309 N.E.2d 795.

Defendant also argues that the telephone call from defendant's sister created nothing more than a mere suspicion, and that defendant's presence in Nervy's apartment cannot be a basis for finding probable cause to arrest. (See *People v. Lumpp* (1983), 113 Ill. App. 3d 694, 447 N.E.2d 963.) We agree that neither of these factors standing alone establish probable cause. They are relevant, however, and can be viewed within the totality of circumstances. See *People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 460 N.E.2d 60.

■■ Based on a totality of these circumstances, we find that a reasonable person having this knowledge would believe that defendant committed the crime, keeping in mind that the officer rests his decision to arrest a person on probabilities and not on proof beyond a reasonable doubt. (*People v. Summers* (1981), 100 Ill. App. 3d 170, 426 N.E.2d 937.) Thus, we cannot say that the trial court's denial of defendant's motion to quash was manifestly erroneous.

■■ Defendant also contends that his arrest should have been

quashed because the police made a nonconsensual entry into Nervy Khan's apartment. Defendant, however, has failed to meet the threshhold requirement of standing to challenge the legality of his seizure because he has not shown that he has a legitimate expectation of privacy in the apartment where he was arrested. (*People v. Seider* (1981), 98 Ill. App. 3d 175, 423 N.E.2d 1217.) Defendant cannot vicariously assert Nervy's claim to a legitimate expectation of privacy in the apartment. (*People v. Keller* (1982), 93 Ill. 2d 432, 444 N.E.2d 118.) Defendant has failed to establish, for example, a right to exclude others from the apartment, a right to use the apartment in Nervy's absence, the possession of a key, the presence of his personal belongings, or anything which might create a legitimate expectation of privacy in the apartment. See *United States v. Stevens* (N.D. Ill. 1982), 543 F. Supp. 929.

Defendant next contends that the trial court erred in failing to suppress defendant's statements as being involuntary and the product of an illegal arrest. Because we have found the arrest to be based on probable cause, we will only address the question of the voluntariness of the statements. The test of whether a confession was admissible at trial is whether the statement met its burden of showing that the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether defendant's will was overcome when he made the statement. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) In making this determination, the court must look at the totality of the relevant circumstances surrounding the making of the statement, including the existence of any threats, promises, or physical coercions; the length and intensity of the interrogation; and the age, intelligence, experience and physical condition of the defendant. (*People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270-71, 105 S. Ct. 334.) The finding by the trial court on the voluntariness of a confession will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.

In the present case, defendant made an oral statement at 8:30 a.m., an oral statement at 3:30 p.m., and a written statement at 4:30 p.m. Defendant maintains that his 3:30 p.m. and 4:30 p.m. statements were involuntary for several reasons. Defendant points out that since he was a juvenile the circumstances surrounding his confessions should be scrutinized with special care. (*People v. Travis* (1984), 122 Ill. App. 3d 671, 462 N.E.2d 654.) Defendant argues that his parents

should have been notified pursuant to statute. (Ill. Rev. Stat. 1985, ch. 37, par. 703—2.) Whether parents are called is not determinative of whether a juvenile's confession should be suppressed. The key is whether the absence of an adult interested in defendant's welfare as envisioned by the statute contributed to the coercive circumstances surrounding the interview. (*People v. Travis* (1984), 122 Ill. App. 3d 671, 462 N.E.2d 654.) Here, the record reveals no coercion, and section 3—2 is not meant to immunize minors from police investigation and interrogation. (*People v. Zepeda* (1970), 47 Ill. 2d 23, 265 N.E.2d 647.) Moreover, there is no requirement that an officer spontaneously offer a suspect the opportunity to make a phone call. *People v. Hebein* (1982), 111 Ill. App. 3d 830, 444 N.E.2d 782.

 Defendant also points to his physical discomfort as support for his contention that his statements were involuntarily coerced. Defendant states that after an early morning arrest he was held in a bare, locked room for nearly eleven hours with inadequate attention to his physical needs. The fact that defendant was awakened at 6 a.m. or that the interview room lacked comfortable furnishings fails to indicate the existence of a coercive element in the circumstances surrounding the confessions. In addition, defendant has failed to sufficiently contradict the testimony of the State's witnesses that he received adequate food, drink, and bathroom accessibility, or that being kept in the interview room for the entire day was abusive. (See *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.) The mere existence of some discomfort is not sufficient to render a statement involuntary. See *People v. Rhodes* (1983), 119 Ill. App. 3d 1002, 457 N.E.2d 1300.

 ██ Defendant next contends that the existence of coercion was indicated by the police's broken promise when they transported Martinez and Aquino to the station with defendant. Even assuming the truth of this promise, the deception would not invalidate the confession as a matter of law. The circumstance would be only one factor to consider when making the determination regarding voluntariness. See *People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228.

Defendant states that lack of voluntariness is evidenced by the suppression of the 8:30 a.m. statement, which was accompanied by inadequate *Miranda* warnings. Initially we note that defense counsel expressly waived any objection to the admission of this statement. Its admission, however, was proper even without the waiver. Defendant argues that if the State cannot show that the previous coercive influence had been dissipated, then suppression of the first statement will

result in a presumption that any subsequent statements were also inadmissible. Defendant relies upon *People v. Reed* (1984), 123 Ill. App. 3d 52, 59, 462 N.E.2d 512 (citing *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673). In both *Reed* and *Taylor*, however, the trial court found that at least one of several confessions was involuntary, thus casting suspicion upon the other confessions. In contrast, here the trial court found that all statements were voluntarily made by defendant. The earlier statement is not tainted by an unwarned but voluntary statement made earlier. (*Oregon v. Elstad* (1985), 470 U.S. 298, 309, 84 L. Ed. 2d 222, 232, 105 S. Ct. 1285, 1293.) In *Elstad* the court stated: "It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period." The unwarned but voluntary statement made at 8:30 a.m. did not compromise the voluntariness of the warned statements made at 3:30 and 4:30 p.m.

■■ In view of the totality of the circumstances surrounding the statements made by defendant at 3:30 and 4:30 p.m., we cannot say that the trial court's finding that these statements were made voluntarily was against the manifest weight of the evidence. Thus, we will not disturb the court's denial of defendant's motion to suppress.

■■ Defendant contends further that the trial court erred in allowing bloodstained clothing into evidence when the clothing was inconsistent with the victim's blood type. The admission of this evidence was not objected to at trial and was not included in defendant's posttrial motion. Thus, defendant has waived any right to review of this alleged error. *People v. Ross* (1968), 41 Ill. 2d 445, 244 N.E.2d 608, *cert. denied* (1969), 395 U.S. 920, 23 L. Ed. 2d 237, 89 S. Ct. 1771; *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.

■■ Defendant also contends that the trial court erred in refusing to give Illinois Pattern Jury Instruction, Criminal, No. 5.04 (2d ed. 1971), regarding the withdrawal exception to the accountability rule. Defendant argues that his warning Garcia that more serious harm might come about sufficiently constitutes evidence of withdrawal from participation in the crime. The statutory definition of withdrawal provides that a person is not accountable for the conduct of another when:

"Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in

such commission \*\*\*." Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)(3).

In the present case, although defendant testified that he terminated his criminal conduct before the murder was committed by warning defendant and leaving the apartment hallway, there is no evidence adduced going to the second element requiring defendant to deprive his prior efforts of effectiveness. (See *People v. Cooper* (1975), 30 Ill. App. 3d 326, 332 N.E.2d 453, *cert. denied* (1976), 425 U.S. 994, 48 L. Ed. 2d 818, 96 S. Ct. 2206.) Defendant relies only on his warning to the victim. He produced no testimony showing that he had neutralized the effect of his prior conduct. Defendant also ignores his own statements to the police in which he admitted being the one who committed the warned of acts. (See *People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.) Defendant's statement concerning the warning was not sufficient evidence of withdrawal from the criminal activity to entitle him to an instruction. The trial court's refusal to give the tendered instruction was proper.

■■ Defendant next contends that he was denied effective assistance of counsel. He asserts that this finding is mandated by the disciplinary action taken against his attorney for neglect of a nonrelated case, and also by the various acts or omissions of counsel. In order to demonstrate ineffective assistance of counsel, defendant must prove that the attorney's representation fell below an objective standard of reasonableness and that defendant suffered prejudice as a result of the incompetence. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d. 504, 473 N.E.2d 1246.) On review, a court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. (*People v. Watts* (1985), 139 Ill. App. 3d 837, 487 N.E.2d 1077.) In determining whether representation was inadequate, the reviewing court must examine the totality of circumstances. *People v. Reese* (1984), 121 Ill. App. 3d 977, 460 N.E.2d 446.

■■ In support of his argument that counsel was incompetent, defendant points to his attorney's six months' suspension from the practice of law. The supreme court suspended the attorney for six months beginning on February 22, 1985, due to his neglect of two personal injury cases which were handled during the period of 1975 through 1982. Counsel began representing defendant here in April 1983. This trial and counsel's disciplinary case both took place in 1983. Defendant fails to show, however, any evidence that the disciplinary proceedings preoccupied the attorney to such a degree that it interfered with preparation of defendant's case. (See *People v. Wil-*

*liams* (1985), 138 Ill. App. 3d 1041, 487 N.E.2d 13.) Moreover, defendant's itemization of his attorney's errors at trial include nothing rising to the level of neglect. For example, he does not contend that his attorney failed to adequately familiarize himself with the relevant facts or law; that his attorney failed to communicate with him; that his attorney failed to appear for hearings; that his attorney failed to prepare for trial each day; or that his attorney failed to prepare motions. Thus, there is nothing in the record to indicate that the six months suspension of defendant's counsel from the practice of law for neglect of an unrelated case created a presumption of incompetent representation of defendant in the present case.

As to the other claimed errors by counsel, a court need not determine whether counsel's performance was incompetent before determining whether defendant suffered any prejudice as a result of the alleged deficiencies. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Defendant lists various acts and omissions made by his counsel, including: accepting a juror who indicated she did not approve of youth gangs; objecting to the admission of evidence showing the identity of defendant's sister as the person who initially called the police, without objecting to the substance of the call; waiving objections to the State's introduction of defendant's first statements during which he accused Martinez of the stabbing and exculpated defendant; failure to make proper objections when defendant was asked to explain certain gang symbols, when defendant was asked about his brother's involvement with the gang, and when defendant was asked whether he previously received *Miranda* warnings; and use of former prosecutor to testify for defendant as an expert witness.

Defendant argues that he probably would not have been convicted if his counsel had not made those alleged errors. Our review of the record demonstrates otherwise. Even if the alleged errors did occur, defendant suffered no prejudice. The evidence was overwhelming against defendant, particularly his own numerous statements wherein he first described himself as an active participant in the beating and later as the person who actually stabbed the victim. We conclude defendant was not denied effective assistance of counsel.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY and WHITE, JJ., concur.