THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM BOBIEK, Defendant-Appellant.

First District (6th Division)   No. 1—93—1876

Opinion filed February 24, 1995.

Rita A. Fry, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, William Bobiek, was convicted following a bench trial of two counts of attempted first degree murder, two counts of aggravated battery with a firearm, and four counts of aggravated battery. He was sentenced to a prison term of seven years in the penitentiary. The issues raised for our review are: (1) whether the trial court erred in denying defendant's motion to quash his arrest on the grounds that he was arrested without probable cause; (2) whether the trial court erred in permitting a police detective to testify to the prior consistent statements of two witnesses; and (3) whether the defendant was proven guilty beyond a reasonable doubt.

The essential facts of this case can be briefly stated. On September 6, 1991, an individual who was spraypainting a wall at Western and McLean in Chicago drew a weapon and shot Hector Marquez, George Raman and Ramon Muniz. The shooter then got into the passenger side of a brown Toyota, which drove north on Western Avenue. As the car passed a hair salon, the passenger shot at a group of people, wounding Efrain Torres. At trial, defendant argued that the proof was insufficient to convict him of the charges. Defendant also raised an alibi defense.

We first address defendant's pretrial argument that he was arrested without probable cause and, therefore, that testimony regarding a lineup conducted at the police station shortly after his arrest should have been suppressed.

Officer Richard Maher testified at the hearing on the defendant's motion to quash the arrest that the shootings occurred at approximately 8:20 p.m. on September 6, 1991. During the investigation police learned that a shooter had fired from the passenger side of a brown Toyota as it travelled north on Western Avenue. After

interviewing witnesses, police did not know how many offenders were involved in the shootings, but they knew that a white or silver four-door GM car may have also been involved. On the night of the occurrence, Maher interviewed Angel Carrasquillo, who told him that "White Boy Billy" had come to a park located less than a mile from the scene of the shootings and warned numerous gang members that they should leave because someone had just shot members of the Spanish Lords street gang.

Three days afterwards, on September 9, 1991, Officer Maher received information from another police officer that White Boy Billy was involved in the shootings. The officer told Maher that White Boy Billy's real name was William Bobiek and that the source of the information was apparently someone in the same street gang as White Boy Billy.

Detective Maher viewed a photograph of William Bobiek and then went to the vicinity of California and Fullerton. Maher did not have an arrest warrant. Maher saw the defendant driving a silver or blue Cutlass which Maher believed was consistent with the description given of one of the vehicles seen at the shooting. Maher stopped the defendant and placed him under arrest.

It is well settled that a person may be arrested without a warrant when a police officer has reasonable grounds to believe that person has committed a crime. (725 ILCS 5/107—2(1)(c) (West 1992).) The statutory standard is the same as the constitutional requirement of probable cause. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) The test is whether a reasonable person, having the knowledge possessed by the officer at the time of the arrest, would believe that the defendant committed the offense. (*Tisler*, 103 Ill. 2d at 237; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) In evaluating whether an officer has probable cause to arrest a defendant, the focus is on probabilities and should not be unduly technical in deciding whether probable cause existed. *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 460 N.E.2d 60.

On a motion to quash an arrest, the burden of proof rests upon the defendant; once the defendant has made a *prima facie* showing of the lack of probable cause, however, the burden of going forward shifts to the State. (*People v. Garcia* (1981), 94 Ill. App. 3d 940, 419 N.E.2d 542.) The trial court's finding with regard to the motion to quash an arrest will not be disturbed on appeal absent manifest error. *People v. Bajt* (1983), 113 Ill. App. 3d 459, 447 N.E.2d 432.

■ In this case, Officer Maher testified he knew the defendant had been named by a source as having been involved with the shootings. While the source of the police information was unknown to Officer Maher, he had been told that the source may have been a member of the defendant's own street gang. In *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 1103 S. Ct. 2317, the Supreme Court indicated that, while hearsay information may support a finding of probable cause to arrest, the reliability of the information, as measured by the veracity of the information's source and the basis of the source's knowledge, is "highly relevant" to the existence of probable cause. (*People v. Tisler* (1984), 103 Ill. 2d 226, 238, 469 N.E.2d 147.) The defendant emphasizes that Officer Maher had no information regarding the veracity of the informant or the specific basis of the informant's knowledge.

In addition to the informant's information, however, Officer Maher stated that he knew a four-door GM car was at the scene of the shootings. The defendant was arrested only after being seen driving a similar automobile. Officer Maher also knew from a witness interview he had conducted that the defendant had been seen shortly after the shootings in the vicinity of the shootings and that the defendant had information regarding the shootings at that time. Considering the totality of information known to Officer Maher and the practical considerations underlying his responsibility to prevent crime, to apprehend criminals, and to act quickly in appraising data (see *People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 460 N.E.2d 60; *People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547), we find no manifest error in the trial court's ruling denying the motion to quash the arrest.

We next address defendant's claim that the trial court, during the course of trial, improperly accepted into evidence testimony from Officer Richard Curley which bolstered the testimony of two of the State's witnesses, Alberto Gonzalez, Jr., and Alberto Gonzalez, Sr.

During the State's case, Alberto Gonzalez, Jr., and Alberto Gonzalez, Sr., testified that as they stood on the sidewalk outside a hair salon on Western Avenue on September 6, 1991, they saw the defendant and another male shooting on McLean Avenue. Gonzalez Jr. testified that he recognized one of the males as being the defendant, White Boy Billy. Both Gonzalez Jr. and Gonzalez Sr. stated that the two males who had fired their weapons on McLean Avenue then got into a brown Toyota and drove toward the hair salon on Western Avenue. When the car arrived near the hair salon, the defendant pointed a gun outside the car window and shot Efrain Torres. Gonzalez Jr. and Gonzalez Sr. each said they identified the juvenile M.M. on the night of the shooting as one of the males who shot down

McLean Avenue. They each said they identified the defendant on September 9, 1991, as the second shooter on McLean Avenue. According to their testimony, the defendant wounded Efrain Torres while Torres was standing near the hair salon on Western Avenue.

The defendant attacked the testimony of Gonzalez Jr. and Gonzalez Sr. during cross-examination and through the direct testimony of Officer Maher. During cross-examination, Gonzalez Jr. and Gonzalez Sr. denied having told the police on September 6, 1991, that the juvenile M.M. had shot Torres. Later, the defendant called Officer Maher to the witness stand and he contradicted the testimony of Gonzalez Jr. and Gonzalez Sr. Maher stated that on September 6, 1991, Gonzalez Jr. and Gonzalez Sr. identified M.M., and not the defendant, as the person who shot Efrain Torres.

Following the defendant's case, the State put on Officer Richard Curley in rebuttal. Officer Curley testified that Alberto Gonzalez, Jr., made statements on September 9, 1991, indicating that police statements, which had been taken on September 6, 1991, and which indicated an identification by Gonzalez Jr. of M.M. as the person who shot Efrain Torres, were incorrect. Curley also testified that Gonzalez Sr. indicated to him on the night of September 9, 1991, that it was the defendant who had shot Efrain Torres.

The defendant argues that the rebuttal testimony of Officer Curley was improper because it merely enhanced the testimony of Gonzalez Jr. and Gonzalez Sr. Pretrial statements are inadmissible to corroborate trial testimony except to rebut an inference or charge of recent fabrication or motive to testify falsely. (*People v. Shum* (1987), 117 Ill. 2d 317, 340-41, 512 N.E.2d 1183; *People v. Powell* (1973), 53 Ill. 2d 465, 474-75, 292 N.E.2d 409.) The State concedes that the testimony of Detective Curley contained prior consistent statements by Gonzalez Jr. and Gonzalez Sr. and that the use of prior consistent statements is generally not permitted. The State argues, however, that the testimony of Officer Curley falls within the exception to the rule.

The prevailing common-law rule has long held that prior consistent statements introduced to rebut a charge of recent fabrication are admissible if made before the time of the alleged fabrication, influence, or motive came into being, but were inadmissible if made afterwards. (*Tome v. United States* (1995), 513 U.S. 150, 130 L. Ed. 2d 574, 115 S. Ct. 696.) The rule is designed to allow a party to rebut an alleged improper motive, not simply to bolster the veracity of the story told. (*Tome*, 513 U.S. at 156, 130 L. Ed. 2d at 581, 115 S. Ct. at 700.) Here there was no indication whatsoever that Gonzalez Jr. and Gonzalez Sr. had any motive to testify falsely or had recently

fabricated their trial testimony, only an indication that they had, at one time, made statements inconsistent with their trial testimony. As our supreme court has noted:

> "[W]hen a witness is impeached by the fact that he has contradicted himself by relating the matter in a different way before trial, the admission of other evidence that he had made a pretrial statement at another time consistent with his testimony shows only that he had been making different statements about the same matter at different times, *and this would in no way rebut the evidence of his unreliability which is imported by proof of the prior inconsistent statement.*" (Emphasis added.) *People v. DePoy* (1968), 40 Ill. 2d 433, 439, 240 N.E.2d 616.

■ Because the defendant neither asserted nor implied a motive as to why Gonzalez Jr. and Gonzalez Sr. would testify falsely, or showed that their testimony was somehow a "recent fabrication," the exception to the rule on inadmissibility which would allow a prior consistent statement into evidence is simply inapplicable. Prior consistent statements may not be admitted merely because a witness has been discredited. (See *Tome*, 513 U.S. at 156, 130 L. Ed. 2d at 581, 115 S. Ct. at 700.) If the only requirement necessary to trigger the exception was the existence of an inconsistent statement made prior to trial, the exception to the rule relating to the use of prior consistent statements would negate the rule *in toto*. We conclude that the admission of Officer Curley's testimony, which contained prior consistent statements of the witnesses Alberto Gonzalez, Jr., and Alberto Gonzalez, Sr., was improper.

Officer Curley's testimony, at most, briefly repeated the witnesses' statements made to him on September 9, 1991. The prejudicial impact of this evidence was slight, if any. The trial court, in weighing the testimony of Gonzalez Jr., Gonzalez Sr., and a third witness, Hector Marquez, knew that there was evidence each had made statements which were inconsistent, yet the court still found the in-court identifications of the defendant by the witnesses sufficient to convict. After carefully reviewing the record, particularly the identification testimony of the witnesses, we agree that none of the identification testimony offered against the defendant was either vague or doubtful. The decision by the court to allow Officer Curley to testify improperly as to the prior consistent statements of Gonzalez Jr. and Gonzalez Sr. did not affect the outcome of the trial and, as such, was harmless error.

■ We now turn to the defendant's contention that the evidence offered at trial was insufficient to convict him of the charges. Defendant argues that he could not have properly been proven guilty be-

yond a reasonable doubt because the witnesses against him "lied" about their previous identifications: (1) witness Marquez initially told Detective Maher that he did not see the face of the person who was spraypainting the wall on McLean; (2) Marquez did not pick out the photograph of the defendant when he was shown a photo array in the hospital, shortly after the shootings; and (3) Officer Maher indicated that Gonzalez Jr. and Gonzalez Sr. had initially identified M.M. as the person who shot Efrain Torres, not the defendant.

When presented with a challenge to the sufficiency of the evidence, the relevant issue for a reviewing court is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. (*People v. Smith* (1993), 257 Ill. App. 3d 174, 176, 628 N.E.2d 798.) It is not a reviewing court's function to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The trier of fact is in the best position to judge the credibility of the witnesses, determine the weight to be given their testimony and the reasonable inferences to be drawn therefrom. *People v. Furby* (1990), 138 Ill. 2d 434, 563 N.E.2d 421.

Hector Marquez testified to seeing the defendant shoot at a group of people on McLean Avenue, and Alberto Gonzalez, Jr., and Alberto Gonzalez, Sr., testified to seeing the defendant shoot at Efrain Torres on Western Avenue. Two of these witnesses, Gonzalez Jr. and Marquez, knew the defendant before the shooting and all three witnesses identified the defendant from a lineup just three days after the shooting. While the defendant has portrayed the trial testimony of these witnesses as being "equivocal," a review of the record does not support this conclusion. Each testified unequivocally that the defendant was a shooter on the evening of September 6, 1991. The testimony of Gonzalez Sr. was particularly strong, despite the evidence offered that he had made inconsistent statements before trial. While it is true that an identification will not be deemed sufficient to support a conviction if it is vague or doubtful, a single-witness identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. (*People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317; *People v. Harris* (1991), 220 Ill. App. 3d 848, 580 N.E.2d 1342.) Here the court had three witnesses to the occurrence who had identified the defendant. In a bench trial it is for the judge to determine the credibility of the witnesses, to weigh the evidence and to draw reasonable inferences therefrom and to resolve any conflicts in the evidence. (*Slim*, 127 Ill. 2d at 302.) While variances between a witness' trial testimony and pretrial statements raise questions of credibility which the trier of

fact must assess in making a determination of guilt (*People v. Holmes* (1990), 141 Ill. 2d 204, 240-41, 565 N.E.2d 950), where the evidence is merely conflicting the appellate court will not substitute its judgment for that of the trier of fact (*People v. Davenport* (1988), 176 Ill. App. 3d 142, 145, 530 N.E.2d 1118).

Defendant argues that his convictions cannot be sustained because he offered the testimony of three witnesses who indicated that he was not at the scene of the shooting during the relevant time. A review of his alibi testimony, however, fails to establish that he was not at the scene. Each of the alibi witnesses who testified could only establish that the defendant was in Skokie at "approximately" or "about" 8 p.m. Defendant himself admitted that he left Skokie with Christine Geiger at around 7:45 p.m. and that she dropped him off near the scene of the shootings at 8:15 p.m. Evidence indicated that the shootings occurred about 8:20 p.m. Here, the defendant's purported alibi testimony fails to establish defendant's inability to have committed the crime of which he has been convicted. The trial court therefore rejected the defendant's alibi defense.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.