THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MARY P. WINGREN, Defendant-Appellee.

Second District   No. 2—87—0216

Opinion filed March 4, 1988.

314

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Judith M. Pietrucha, Assistant State's Attorneys, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph M. Laraia and Kenneth D. Hubbard, both of Joseph M. Laraia & Associates, P.C., of Wheaton, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

The State appeals the granting by the circuit court of Du Page County of the motion to quash arrest and suppress evidence of defendant, Mary Wingren. Defendant was arrested for DUI in violation of sections 11—501(a)(1) and (a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 11—501(a)(1), (a)(2)) and driving without a valid license in violation of section 6—101 of the Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6—101). We reverse and remand.

The arresting officer, Mark Suchomel, testified that he is employed by the Willowbrook police department and was called to the vicinity of 704 73d Court in Willowbrook. It was raining heavily and the rain was turning to sleet. He observed a blue Honda automobile in the backyard of the house at the address, approximately 50 to 60 feet be-

hind the house. He pulled into the driveway and went to the house. The driver of the vehicle was in the car and attempting to rock the vehicle out of the mud. The two nearest streets were in front of and behind the property. The car was about 30 feet from the road behind the property and 80 to 100 feet from the road fronting the property.

While standing near the rear door of the residence, the officer observed a woman exit the vehicle. After a short conversation with the officer, she returned to the vehicle. He identified defendant as the woman he saw that night. Defendant had asked the officer to push her car out, but he recalled stating that it would be impossible. She returned to the car and again attempted to rock it out of the mud. The officer returned to his vehicle and drove it around the block to the street behind the residence and closer to defendant's vehicle. He asked her to step over to his vehicle. The area was lawned backyard except where her vehicle made muddy tire tracks.

Due to the weather conditions, the officer asked defendant if she would like to sit in his car. They discussed calling a tow truck. The officer told her he was taking her to the station because she had no valid driver's license and to give her performance tests. He did not see her vehicle drive on a public highway.

On cross-examination, the officer testified that when she came back to his vehicle, he asked to see her driver's license. She was unable to produce one, stating that it was at home.

Defendant testified that she resides in Willowbrook and that at 11:15 p.m. on March 3, 1985, she was in her automobile, which was stuck on the driveway of a home at 704 73d Court in Willowbrook. The home was owned by friends of her husband's family. She was trying to get the car out of the mud, rocking it back and forth. She saw the officer and asked him to help push her car out. The officer told her it was not his job. She got back in the car and again tried to move it. She again exited her vehicle and was asked by the officer to come over to his squad car. He asked her for identification. She returned to her car to get her purse and proceeded to look for her license. He asked her to get in the vehicle and asked her name. She told him both her name and address. He did not give her any performance tests at the scene. He did ask her to perform sobriety tests at the station. She performed the heel-to-toe test exactly as told, walking right down the line, turning, and walking back without swaying or losing her balance.

She also performed the finger-to-nose test, touching her nose with the tip of each finger. The officer then asked defendant to take a breathalyzer test. She asked if she could call her husband. She did

and he came down to the station. Defendant, her husband and another police officer had a conversation. This officer, who was not the arresting officer, told her that if she didn't take the test she would lose her licence. She went back to the arresting officer and told him she would take the test. She felt that she had no choice. She was of the opinion that she was not drunk on the evening in question.

On cross-examination, defendant testified that the officer asked her for her license and then ran a check and told her the license was expired. She testified that she told him she knew. He then asked her to accompany him to the station. He did not tell her she was under arrest for that offense. She was issued a citation for the offense of no valid driver's license. She did not recall telling the officer that she had been driving to meet her husband, and she's sure she mentioned something about that. She didn't recall telling the officer that she had been driving the vehicle earlier that evening. The arresting officer did not read implied consent warnings to defendant. She did not know the name of the officer who allegedly told her she had to take the test. The arresting officer administered the breath test.

The State also called Officer Suchomel as its witness. He testified that he parked his vehicle in the driveway and approached the residence and heard a car engine in the backyard. He observed a blue Honda in the backyard of the residence accelerating back and forth. There were tire tracks in the backyard lawn, starting at the end of the gravel driveway leading to where the car was situated. He spoke with the residents of the house concerning why he was summoned to the house. Defendant exited the vehicle and approached the officer. He asked her what happened. She said that she had a fight with her husband and was on her way to her in-law's home when she turned down the driveway thinking it was a street and ended up in the backyard. She was wet from the rain, but the officer also observed that her eyes were glassy and red, and her speech was slurred. He also detected a strong odor of alcohol. He testified that 73d Court is a public highway.

He drove his vehicle to a side street closer to defendant's vehicle and requested her driver's license. Defendant made several attempts to find it, stating that she must have left it at home. The officer went back to his vehicle and confirmed that she had no valid driver's license. He invited defendant to sit in the squad to avoid the rain and advised her that her license had expired more than six months ago. He further told her that the vehicle could not be pushed out, and that he was charging her with driving with no valid license. The officer issued a citation for that offense based on the fact that she had no li-

cense, his radio license check confirmed that her license had expired, and the fact that she admitted driving and he found her behind the wheel of the auto attempting to free it from the mud.

Next, the officer advised her that he would be transporting her to the station to take sobriety tests since the weather was too bad to administer them at the scene. They arrived at the station at approximately 11:45 p.m. and proceeded to the booking area. He asked defendant to perform the walk-and-turn test. She had trouble staying on the line, staggered, and used the wall to hold herself up. She also failed to maintain heel-to-toe contact. She also failed the finger-to-nose test, missing her nose with both index fingers. He then advised her that based upon his observations, he was placing her under arrest for DUI. Based upon his experience as both a police officer and private citizen and his observations, it was his opinion that defendant was under the influence of alcohol.

The arresting officer also administered the breathalyzer test to defendant. He requested a matron to be present after defendant's condition became aggressive and insulting. The officer did not read to defendant the implied consent warnings. The officer was in defendant's presence constantly after advising her of the arrest for DUI, and he did not hear anyone read the defendant implied consent warnings or tell her that she had to take the test.

On cross-examination, the officer testified that at the time of the arrest he had been with the Willowbrook police department for three years. He had been an officer for other departments previously. When he first spoke with defendant, they were a foot apart standing in the rain. She may have had mud on her shoes but was otherwise not muddy. She was also quite excited. She told him that she drove onto the driveway from 73d Court. He could not recall if she asked him to call a tow truck. After their brief initial conversation, she walked back to her car through the mud. Defendant was wet when they arrived at the station. He thought she might have been wearing boots but could not recall if they were muddy. She did not fall while taking the walking test, but did lean against the wall. Defendant seemed to understand his directions in taking the tests.

The breathalyzer test was given at 1:07 a.m. Defendant was allowed to speak with her husband outside the officer's presence. He did not know if anyone else was in that room. The conversation lasted between 5 to 10 minutes. There were at least two superior officers inside the station that evening.

The trial court granted the motion, despite finding that he believed the officer's testimony and recognizing that sobriety tests could

not have been given at the scene due to the weather conditions. The court stated that this is the type of ticket that would not normally require taking a person to the station, and that the officer was taking her to the station to perform the tests. The court held that there was probable cause to arrest her for DUI after the station tests.

We quote the trial court's findings from the record verbatim as they appear somewhat equivocal, ambiguous and, perhaps, contradictory:

"THE COURT: All right. This is a motion to quash the arrest and suppress evidence. I'm not going to go through all the testimony, but suffice it to say, there clearly were no performance tests on the scene. It was a torrential downpour.

It's not that I am saying I don't believe the officer as to what occurred at the scene, but the way it was occurring—I can understand the situation where they wouldn't do field tests at the scene, but this is the type of ticket that is I think normally they wouldn't take a person down to the station for, and I think that what the officer was doing was just taking her to the station to perform the tests.

I am bothered by that. I don't think there was probable cause to arrest the defendant at the scene for driving under the influence of alcohol. There was probable cause—I think it appeared to be probable cause once they got to the station.

This is a tough call for me. Maybe I'm wrong, but I think the officer took the defendant to the station just to perform the tests because it was inconvenient to perform the tests at the scene because of the torrential downpour. I am bothered by that. Because of that, I'll grant the motion to quash the arrest and suppress evidence."

On appeal, the State contends that: (1) having arrested defendant at the scene for the driver's licence. violation, the police were authorized to take her into custody and transport her to the police station; (2) the testimony of the police officer with regard to his observations at the scene, which the court found credible, were sufficient to support the officer's reasonable belief that defendant was driving while intoxicated; (3) the arresting officer, having testified as to his observations on the scene, was authorized to request defendant to perform the field sobriety tests; and (4) the trial court found that there was probable cause to arrest defendant for DUI after the field sobriety tests.

Defendant maintains that the judgment of the trial court was correct because: (1) the officer had no legal authority to require defend-

ant to produce her driver's license where (a) she was on private property and (b) and he had no reasonable and articulable suspicion she was committing a crime; (2) the officer did not have the authority to arrest defendant for violating section 6—101 of the Vehicle Code: (a) because defendant was not operating a motor vehicle on a public highway, a necessary element of that offense; (b) even if the officer testified that defendant told him she had driven on 73d Court, there is no evidence nor can the court infer that 73d Court is a public highway; (c) even if 73d Court is established to have been a public highway, there is no evidence that defendant drove off 73d Court and became stuck; and (d) the trial court resolved whatever conflicts existed on these issues in favor of defendant as evidenced by its granting defendant's motion to quash and suppress; (3) the police officer had no authority to require defendant to go to the police station, but (a) rather he only had authority to issue a notice to appear or allow bond to be posted on the scene, and (b) the driver's license violation arrest was a subterfuge to obtain further evidence to support a charge of DUI; and (4) defendant did not voluntarily consent to the breath test because (a) she had been misled into believing a refusal would result in a license suspension by a Bolingbrook police officer-friend of her husband's at the police station and (b) the arresting officer failed to inform her of the consequences of refusing to take the breath test.

■ The standard for appellate review of a motion to suppress is whether the trial court's ruling was clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869; *People v. Wolsk* (1983), 118 Ill. App. 3d 112, 454 N.E.2d 695.) In a hearing on a motion to suppress evidence, defendant has the burden of proof that the evidence was the product of illegal police activity. (Ill. Rev. Stat. 1983, ch. 38, par. 114—12; *People v. Heflin* (1976), 40 Ill. App. 3d 635, 351 N.E.2d 594, *aff'd on other grounds* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.) Although the State has the burden of going forward with evidence to counter a *prima facie* case made by a defendant, the ultimate burden of proof rests on the defendant. (*People v. Douglas* (1980), 86 Ill. App. 3d 668, 408 N.E.2d 239.) An arrest is made by an actual restraint of the person or by the person's submission to police custody. Ill. Rev. Stat. 1985, ch. 38, par. 107—5(a); *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915.

■ Reasonable grounds and probable cause are synonymous for purposes of arrest (*People v. Mitchell* (1984), 123 Ill. App. 3d 868, 872, 463 N.E.2d 864, *appeal denied* (1984), 99 Ill. 2d 533; *People v. Bafia* (1983), 112 Ill. App. 3d 710, 716, 445 N.E.2d 878) and are

present where the facts and circumstances known to the arresting officer are sufficient to lead a reasonable man to believe a crime has been committed, and that it was committed by defendant. (*People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292; *People v. Tisler* (1984), 103 Ill. 2d 226, 237, 469 N.E.2d 147; *People v. Lazzara* (1986), 145 Ill. App. 3d 677, 681, 495 N.E.2d 1144.) This standard requires more than mere suspicion, but does not require the arresting officer to possess evidence sufficient to convict the defendant. (*People v. Williams* (1985), 137 Ill. App. 3d 736, 742, 484 N.E.2d 1191, *appeal denied* (1985), 101 Ill. 2d 587; *People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 842, 460 N.E.2d 60, *appeal denied* (1984), 101 Ill. 2d 548; *People v. Wolsk* (1983), 118 Ill. App. 3d 112, 116, 454 N.E.2d 695, *appeal denied* (1983), 96 Ill. 2d 565.) In determining whether a warrantless arrest meets the probable cause requirement, the court should look at the totality of the circumstances. *People v. Moody* (1983), 94 Ill. 2d 1, 8, 445 N.E.2d 275; *People v. Valentin* (1985), 135 Ill. App. 3d 22, 30, 480 N.E.2d 1351. See *People v. Graziano* (1986), 151 Ill. App. 3d 475, 502 N.E.2d 822.

Contrary to the contention of defendant, we construe the trial court's finding that it did not disbelieve the arresting officer as accepting the officer's testimony as truthful with regard to what happened at the scene. The trial court concluded, however, that the officer's observations of defendant at the scene did not give rise to an articulable suspicion or probable cause to believe that defendant had been driving or in physical control of a vehicle while intoxicated. This construction of the trial court's order is supported by the trial court's specific finding that the arrest for the license violation was a pretext or subterfuge for obtaining a field sobriety to support a charge of DUI. The finding of the trial court that the arresting officer did have probable cause to arrest defendant for DUI after the field sobriety tests has not been cross-appealed by defendant. Therefore, no question on that issue is before us.

■ Probable cause to arrest a motorist for DUI has been commonly established by the testimony of the arresting officer, in spite of the defendant's contradictory testimony, that the motorist had about him or her the odor or strong odor of alcohol, had slurred speech or had red and glassy eyes. (See *People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275; *People v. Graziano* (1986), 151 Ill. App. 3d 475, 502 N.E.2d 822; *People v. Gaddi* (1986), 145 Ill. App. 3d 227, 494 N.E.2d 696; *People v. Rathnau* (1986), 140 Ill. App. 3d 88, 488 N.E.2d 657; *People v. Creighton* (1985), 137 Ill. App. 3d 952, 485 N.E.2d 547; *Peo-*

*ple v. Keller* (1984), 128 Ill. App. 3d 325, 470 N.E.2d 1200.) Generally, these observations are supplemented by other observations apparent to the officer or inferred from his observations such as speeding, weaving, erratic driving, driving on the wrong side of the road, being stuck in a ditch (*cf. People v. Vallero* (1985), 134 Ill. App. 3d 919, 481 N.E.2d 297) or, as in the case at bar, being in a vehicle which is stuck in the mud. The fact that defendant was stuck in the mud in someone's backyard, which here could be explained by adverse weather conditions, would not preclude the officer from inferring from his observations that the occurrence resulted from defendant's having driven under the influence of alcohol or a combination of the weather and defendant's intoxication. The officer was not required to have seen defendant drive off the road, into the driveway and onto the lawn. The officer need only have a reasonable belief to form an opinion that, based on his experience, defendant was under the influence of alcohol. (*People v. Wolsk* (1983), 118 Ill. App. 3d 112, 454 N.E.2d 695.) Further, in light of the arresting officer's testimony regarding his observation of defendant, he may have been derelict in his duty to protect the public from an intoxicated driver if he did not take her into custody. (See 118 Ill. App. 3d 112, 454 N.E.2d 695.) In *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 495 N.E.2d 595, this court held that a police officer, who observed a driver in the front seat of an automobile parked on private property with the engine running and the lights on, had probable cause to investigate and administer sobriety tests. In sum, the instant case is distinguishable from our *People v. Fox* (1981), 97 Ill. App. 3d 58, 421 N.E.2d 1082, relied upon by defendant, where we held that there were insufficient articulable facts to justify the officers' belief that the occupants of the vehicle were engaged in possible criminal behavior when they were observed simply driving away from a dock area where as recently as a week prior there were persons partying and littering the area.

While some of the testimony of the arresting officer as to what occurred at the scene was contradicted or disagreed with in part by the testimony of defendant, the court's statement that "[i]t's not that I'm saying I don't believe the officer as to what occurred at the scene" requires us to conclude that the court found the officer's testimony truthful and credible. Therefore, we must conclude that the trial court found, as a matter of law, that the observations testified to by the officer did not constitute an articulable suspicion or probable cause so as to authorize defendant's arrest. This conclusion, it appears, led the court to conclude that the driver's license arrest was pretextual or, as defendant characterizes it, a subterfuge to gather ev-

idence to support a charge of DUI.

■■ ■ However, the record discloses that the arresting officer was dispatched to the scene as a result of a call to the police. He went to the rear porch of the property and observed defendant trying to extricate her blue Honda in the rear portion of the property at 704 73d Court. Defendant approached the officer and requested assistance. The officer declined her request to push her car. He was within one foot of her during the conversation, which was held under rainy conditions, and he observed the strong odor of alcohol on her, that her speech was slurred and that her eyes were red and glassy. We conclude that the officer had probable cause as a matter of law to arrest defendant for driving under the influence. Furthermore, while it was not necessary that the officer observe defendant driving or in physical control of the vehicle (see *People v. Wolsk* (1983), 118 Ill. App. 3d 112, 454 N.E.2d 695), he did testify to defendant's statements to him that she was driving on 73d Court when she turned onto the private property and became stuck. He also observed her behind the wheel driving the car back and forth to extricate it. (*Cf. People v. Vallero* (1985), 134 Ill. App. 3d 919, 481 N.E.2d 297.) Therefore, there can be no question that the evidence established that defendant was driving or in physical control of the vehicle to satisfy the provision of sections 6–101, 11–501(a)(1) and (a)(2) of the Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 6–101, 11–501(a)(1), (a)(2)).

■■ The second basis for the trial court's judgment was that the officer's arrest of defendant for the driver's license violation was a pretext to obtain sobriety tests of defendant to support a DUI charge. First, we note that defendant challenges the legality of that arrest because the police officer did not observe defendant driving on the public highway of the State, which is a necessary element of section 6–101 of the Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6–101). (*People v. Frye* (1983), 113 Ill. App. 3d 853, 447 N.E.2d 1065.) However, as we have concluded that there was ample credible evidence adduced at the hearing that defendant was driving, we need not pursue that aspect of the issue further. Additionally, defendant misstates the record in asserting that there is no evidence in the record that 73d Court was a public highway. The arresting officer so testified without objection or rebuttal by defendant. The only evidence in the record on the issue established that 73d Court was a public highway.

The trial court found and defendant maintains that defendant's driver's license arrest was a subterfuge and, therefore, improper. (See *People v. Mathis* (1977), 55 Ill. App. 3d 680, 371 N.E.2d 245.) We have concluded that the officer had probable cause to arrest defend-

ant for DUI after his initial conversation with and observation of her at the scene. Therefore, upon defendant's failure to produce a valid driver's license after having been legally detained by the officer, her custodial arrest for the license violation, while unnecessary, was both legal and appropriate. *People v. Ramsey* (1979), 77 Ill. App. 3d 294, 395 N.E.2d 973.

■ Defendant's last contention is that her submission to the breath test was involuntary because her consent had been obtained through a misrepresentation to her of a fellow officer of the arresting officer. The fellow officer was a personal friend of defendant's husband and informed her that her refusal to take the test would result in a suspension of her license. Defendant premises her argument on the factual presumption that the record fails to establish that she drove on a public highway of the State, a predicate to the application of the implied consent statute. (Ill. Rev. Stat. 1983, ch. 95½, par. 501.1(a); *People v. Kissel* (1986), 150 Ill. App. 3d 283, 501 N.E.2d 963.) It follows from defendant's presumption that the implied consent statute was inapplicable to her and, therefore, the fellow officer's advice was erroneous.

However, as we have indicated, the record supports the conclusion that she had driven on a public highway of the State, and immediately before the instant occurrence (see *People v. Kissel* (1986), 150 Ill. App. 3d 283, 501 N.E.2d 963), and, therefore, her consent to the test is implied. We conclude that defendant's voluntariness argument is without merit.

We reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings.

Reversed and remanded.

INGLIS and UNVERZAGT, JJ., concur.