No. 2--06--0503          Filed: 3-10-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--DT--144 |
| WAYDE J. LURZ, | ) ) ) | Honorable Michael P. Bald, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BYRNE delivered the opinion of the court:

Following a jury trial, defendant, Wayde J. Lurz, appeals his conviction of driving while under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(2) (West 2006)). On appeal, he raises three issues: (1) lack of probable cause to arrest; (2) insufficient evidence of driving while under the influence; and (3) erroneous jury instructions. For the reasons that follow, we affirm.

BACKGROUND

I. Hearing on the Motion to Quash Arrest and Suppress Evidence

At the hearing on the motion to quash arrest and suppress evidence, defendant testified that he was walking west on Route 20 in Stephenson County around 4 a.m. on September 19, 2005, when an officer in a squad car stopped him. He had been walking for about an hour at that point. He was searching for help because the vehicle that he owned was "out in the road." Defense counsel asked

defendant if he had driven any vehicle on that night. Defendant responded, "Not to my knowledge. I had a designated driver."

Defendant did not remember exactly where he was coming from that night, only that it was "some bar or something by Ridott Corners." Nor did he remember his conversation with the officer, just that he needed a ride to Lamm Road. Defendant further testified that no one was with him when the officer stopped him.

Defendant recalled that the officer told him that his vehicle was sitting along the road. Defense counsel asked defendant if he had been driving that vehicle and defendant responded, "Not that I am aware of. I don't remember." The following exchange then took place:

> "MR. MATEAS [Defense counsel]: Do you know how the vehicle got where it was?
>
> DEFENDANT: I guess it ran out of gas that is what I--you know--
>
> MR. MATEAS: Were you driving it at the time?
>
> DEFENDANT: I must have been. I don't really--
>
> THE COURT: I'm sorry, I didn't hear that answer.
>
> DEFENDANT: I don't think I was driving."

Defendant attempted to explain that it was his birthday the day before and that, at a little celebration for it in the late afternoon he drank beer and Jack Daniels. Defendant insisted that he did not drive or control any vehicle that night. However, defendant testified further that he had the vehicle's keys and the title in his possession when he was arrested, but that was all he said he could remember.

Defendant continued to state that he did not remember being arrested, but he recalled trying to cooperate with the Breathalyzer test while at the jail. He testified that, when he blew into the mouthpiece, nothing happened and the police kept quizzing him over and over.

On cross-examination, defendant reiterated that the vehicle was out of fuel and that nobody answered when he called to get a gas can, so he started walking. "And then I started drinking. Because there was some alcoholic beverages in the vehicle in the back." Defendant stated that he was not drinking and driving. Defendant stated that he took a fifth of Jack Daniels and some beer and placed them in his pockets and drank while he walked down the street. He stated that he lost the Jack Daniels when he fell into a ditch. Defendant claimed that the police did not report that he had beers in his pockets. When asked who drove the vehicle to where the police found it, defendant responded that he did not remember. Defendant stated that the officer took the only keys to the vehicle, which defendant believed were in his coat pocket.

On redirect, defendant testified that he did not remember exactly how he got to the area where he ran out of gas, but he knew that his friend Elisabeth Lipford was driving when they ran out of gas. He thought that she went home in her car.

Deputy Robert Douglas of the Stephenson County sheriff's office testified that, on September 19, around 4:05 a.m., he received a call describing a male who was walking or staggering along the side of the road at Route 20 and Bunker Hill Road. Upon his arrival at the scene, Deputy Douglas noted that defendant's eyes were bloodshot and glassy and that he was having trouble walking and maintaining his balance. Deputy Douglas testified that defendant told him that his truck had run out of gas and that he was walking to a friend's house. When Deputy Douglas asked him where his friend lived, defendant pointed to some orange lights emanating from a tire plant on the horizon.

When Deputy Douglas asked defendant for his license, defendant fumbled in his wallet for a few seconds even though Deputy Douglas could clearly see his driver's license in the front of the wallet. Deputy Douglas further testified that he noted a strong odor of alcoholic beverage coming from defendant's facial area.

Deputy Douglas asked defendant at that point whether he had been drinking, and defendant responded that he had "had a couple." When Deputy Douglas asked for specifics, defendant said, "a few." Defendant told him that he had had beer before he drove the truck. Deputy Douglas asked him if he drove his truck to the place where it ran out of gas and defendant responded, "yes." Defendant also told Deputy Douglas that he was alone.

Deputy Douglas testified that he drove defendant back to the truck to insure that it was not a hazard on the roadway. The truck was located a half mile east of Ridott Corners, which is at Rock City Road and Route 20. Deputy Douglas observed that it had no registration and asked defendant whether he had insurance. Defendant told him that he did. After pulling several pieces of paper out of his wallet and inspecting them, defendant told Deputy Douglas that he did not have insurance. Deputy Douglas stated that defendant admitted that the keys to the truck were in his pocket.

Because defendant seemed to have trouble maintaining his balance, his speech was slurred and difficult to understand, and he admitted that he had been drinking, Deputy Douglas asked defendant to perform field sobriety tests. Defendant told him that he had twisted his ankle while walking, so Deputy Douglas omitted the tests that would have been affected by defendant's ankle injury. Deputy Douglas testified that defendant performed poorly on the two tests he performed. At this point, based on his training and experience, Deputy Douglas believed that defendant was

under the influence of alcohol and placed defendant under arrest for DUI.  Deputy Douglas then handcuffed defendant and transported him to the Stephenson County jail.

Upon arrival at the Breathalyzer room at the jail, Deputy Douglas issued defendant a citation for DUI and read him a warning to motorists.  Deputy Douglas believed that defendant purposely failed the Breathalyzer test.  Defendant allegedly did not blow into the machine as instructed.

During cross-examination, defense counsel asked Deputy Douglas if he had asked defendant when he consumed the alcohol, as he could have done so 8 or 20 hours before he drove his truck.  Deputy Douglas responded: "That would not be correct.  If it had been twenty hours or eight hours before there would not have been the strong odor of alcoholic beverage coming from him any longer."

In denying the motion to quash and suppress, the trial court noted that defendant had blocks of testimony where he stated that he did not remember what he did that night.  The trial court found it interesting that defendant would have the only keys to the vehicle that night.  Additionally, it did not make sense to the court "to think that someone else would have been operating that vehicle on that night.  That person would have left the keys in the car or taken them with them."  Regardless, given defendant's admissions that he had been drinking before he drove and that he was alone, and the additional evidence of the strong odor of alcohol and bloodshot eyes, the trial court found that Deputy Douglas had probable cause to arrest defendant for DUI.

## II.  Trial

Deputy Douglas testified as he did at the hearing on defendant's motion to quash arrest and suppress evidence.  Around 4 a.m. on September 19, 2005, he drove his car to the area identified in the police dispatch and saw defendant walking on the side of the road on Route 20 near Bunker Hill

in Stephenson County. After he exited his squad car and defendant came near the car, Deputy Douglas asked defendant what was going on, where he was going, and what he was doing. Defendant responded that his vehicle had run out of gas and that he was walking to his friend's house for assistance. Defendant pointed to some lights down the road and told Deputy Douglas that his friend lived there. Deputy Douglas recognized that the lights were in the parking lot of the Kelly-Springfield Tire Company. Deputy Douglas asked defendant if his friend worked at the plant, because those were the lights to the plant. Defendant replied that his friend lived there.

Deputy Douglas noticed that defendant's eyes were bloodshot and glassy, that his speech was somewhat slurred, and that he appeared to have trouble maintaining his balance. Deputy Douglas also noticed the smell of an alcoholic beverage coming from defendant's facial area. He then asked defendant for identification. Defendant pulled a wallet from his pocket and Deputy Douglas noticed defendant's driver's license in plain sight, although defendant fumbled through his wallet before he finally located it. Defendant told Deputy Douglas that he had had a few beers that night and that he had been drinking before he drove. Defendant further stated that he was alone.

Deputy Douglas asked defendant if he would like a ride to his friend's house but first explained to defendant that he would need to check on defendant's truck to make sure that it was not a traffic hazard. Deputy Douglas could smell the strong odor of alcohol emanating from defendant. Deputy Douglas drove down the road and found defendant's truck approximately a half mile east of Rock City Road.

Deputy Douglas noticed that the truck had no registration and asked defendant about insurance. Defendant pulled several slips of paper from his wallet and said he did not have insurance. Deputy Douglas asked defendant about keys to the truck. Defendant had several keys

in his pocket and Deputy Douglas tried several of them. Because of the multitude of keys, he could not find one that worked in the truck, so he finally gave the keys back to defendant.

Deputy Douglas asked defendant to perform field sobriety tests. Defendant told him that he had twisted his ankle along the side of the road, and Deputy Douglas told him that they would not do any tests that involved using his ankle. Deputy Douglas believed that defendant did not perform the tests well and, based on his training and experience, he believed that defendant was under the influence of alcohol.

Deputy Douglas further opined that defendant had driven the truck while under the influence of alcohol. He reiterated his testimony that defendant had told him that he was driving and that he was alone. According to Deputy Douglas, at no time did defendant allege that someone else was driving the truck. Although his report did not indicate it, Deputy Douglas stated that the passenger seat of the truck was covered with papers and a sweatshirt, which would make it uncomfortable for someone to sit on.

Deputy Pamela Wilson, a certified Breathalyzer operator with the Stephenson County sheriff's department, testified that she asked defendant 10 times to take a Breathalyzer test and that each time defendant failed to give a yes or no answer. After about five minutes, defendant agreed to take the test. Deputy Wilson stated that defendant's breath did not register and opined that defendant did not breathe strongly enough into the machine. Deputy Wilson also noted that defendant complained repeatedly about being arrested for DUI when he was not driving. When asked whether he gave the name of "someone else who might have been driving," Deputy Wilson replied "no."

Elisabeth Lipford testified for the defense that she resided on a farm on East Lamm Road in Freeport, Illinois. Lipford described her relationship with defendant as a friendship and said that she had known defendant for 10 years. She explained that the farm had two residential structures; she lived in one and defendant lived in the other.

On September 19, 2005, between 3:15 and 3:30 a.m., Lipford was in her home with defendant, while her children were sleeping. Lipford and defendant had just finished cleaning after a party they had given at the farm. They were getting ready to go to Aurora, Illinois, to help her mother do some work and move from her house. Lipford and defendant left in defendant's truck, with Lipford driving. Lipford had gone to Aurora on numerous occasions. Lipford's mother stayed behind, watching Lipford's children.

As Lipford was driving, the truck sputtered a few times and ran out of gas. The truck stopped at Route 20 near Rock City Road. Lipford and defendant argued. Lipford stated that defendant was intoxicated and belligerent. Lipford testified that she became angry, threw the keys at defendant, and told him that she was taking off and that he should get the gas and deal with it. Lipford then walked away from the truck and went to her friend Jill Burlingame's house, which is located east of where the truck ran out of gas. Lipford's friend was not at her house, and Lipford walked home to the farm. Lipford stated that she never observed defendant drive the truck.

On cross-examination, the prosecutor asked Lipford if, after defendant had been arrested for DUI, she spoke to anyone from the sheriff's department or the State's Attorney's office to inform them that she had been the person driving the truck that night. Other than the person at the impound lot, Lipford responded, she had not told anyone until the trial that she had been the person who had driven the truck that night.

Lipford stated that driving to her mother's house at 3:30 in the morning was not an emergency. Lipford stated, "I like to do it when [the kids] are sleeping, and if someone is there watching them, I can do the drive and then get back *** when they are up." Lipford did not recall any papers or other things of that nature inside the truck. Nor did she recall defendant having to move anything to sit down.

Following closing argument, the jury returned a guilty verdict. Thereafter, the trial court sentenced defendant to a term of 30 days in jail and issued a fine and costs. Defendant timely appeals.

ANALYSIS

I. Probable Cause

Defendant's first argument on appeal is that Deputy Douglas lacked probable cause to arrest him and that the trial court erred in denying the motion to quash arrest and suppress evidence. Although defendant admits that he was under the influence of alcohol, he asserts that Deputy Douglas never observed or had any evidence that defendant had driven a motor vehicle while under the influence of alcohol.

On a motion to quash arrest and suppress evidence, it is the defendant's burden to present a prima facie case that the police lacked probable cause to arrest. People v. Brexton, 343 Ill. App. 3d 322, 326 (2003). Once the defendant has done so, "the State has the burden of going forward with evidence to counter the defendant's prima facie case." People v. Gipson, 203 Ill. 2d 298, 307 (2003). When reviewing a trial court's decision regarding a motion to quash arrest and suppress evidence, we must accord great deference to the trial court's factual findings and credibility assessments and will reverse those findings only if they are against the manifest weight of the evidence. People v.

<u>Sorenson</u>, 196 Ill. 2d 425, 431 (2001). However, a reviewing court will review <u>de novo</u> the ultimate question of whether a motion to quash and suppress should be granted on a given set of facts. <u>People v. Luedemann</u>, 222 Ill. 2d 530, 542-43 (2006).

Even though Deputy Douglas never observed defendant driving while intoxicated, we find that the facts known to Deputy Douglas at the time he arrested defendant gave rise to probable cause to support the arrest. Probable cause exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the person arrested has committed a crime. <u>People v. Sims</u>, 192 Ill. 2d 592, 614 (2000). The existence of probable cause to arrest depends upon the totality of the circumstances at the time of the arrest. <u>Sims</u>, 192 Ill. 2d at 615. In this case, not only was defendant under the influence of alcohol at the time of the arrest, but he admitted to Deputy Douglas that he drove his vehicle to the point where it ran out of gas, that he was alone, and that he had the keys to the vehicle. Based on Deputy Douglas's observations and defendant's admissions, a reasonably cautious person would have been led to believe that defendant had driven the vehicle while under the influence of alcohol.

Defendant asserts that the only piece of evidence that the trial court relied on in justifying a finding of probable cause was defendant's admission that he drove his vehicle to the point where it ran out of gas. Defendant believes that this statement was unreliable because it was not clear whether defendant was intoxicated or under the influence of alcohol when he was driving, how much time transpired between his drinking and driving, or whether defendant drank <u>after</u> the vehicle already had run out of gas.

We note first that, in finding probable cause, the trial court did not rely on defendant's statement that he drank before he drove his vehicle. Rather, the trial court relied on Deputy

Douglas's testimony that there would not have been the strong odor of alcoholic beverage coming from defendant any longer if he had ingested alcohol 8 or 20 hours before he drove his truck. Further, in finding that defendant and not someone else drove the truck, the trial court found it interesting that defendant had the only keys to the vehicle that night and it surmised that, given defendant's inebriated state, if someone else had operated the vehicle that night, that person would have either left the keys in the vehicle or taken them with her. In light of the evidence presented, including defendant's admissions, we agree that probable cause existed.

Defendant relies on this court's decision in People v. Boomer, 325 Ill. App. 3d 206 (2001). In Boomer, an officer dispatched to an accident scene found the defendant lying in a ditch approximately 15 feet from his motorcycle. Boomer, 325 Ill. App. 3d at 207-08. The defendant smelled of alcohol, and he admitted to having consumed alcohol before driving his motorcycle. Boomer, 325 Ill. App. 3d at 208. On appeal, this court affirmed the trial court's determination that the officer lacked probable cause to arrest the defendant based on those circumstances. Boomer, 325 Ill. App. 3d at 209-11.

In holding that the facts there did not give rise to probable cause to arrest, we distinguished the Boomer case from People v. Brodeur, 189 Ill. App. 3d 936 (1989), and People v. Wingren, 167 Ill. App. 3d 313 (1988), in which probable cause to arrest did exist, on the ground that the defendants in those cases exhibited bloodshot eyes and slurred speech in addition to emitting an odor of alcohol. Nothing about the defendant's demeanor, appearance, or behavior in Boomer suggested intoxication. Boomer, 325 Ill. App. 3d at 210. In Boomer, all that was known about the defendant's accident was that he apparently lost control of his motorcycle. The arresting officer spoke with a witness who observed "sparking," and there was no evidence that the defendant was driving in an erratic manner.

We further noted that, by its very nature, a motorcycle is vulnerable to any number of road hazards that a vehicle with four wheels could safely negotiate. Boomer, 325 Ill. App. 3d at 210. Thus, there was no evidence of intoxication and no evidence that the accident was caused by the defendant's alleged intoxication.

Like in Boomer, defendant here admitted to having consumed alcohol before driving. However, this case contains additional indicia of intoxication that were not present in Boomer, like bloodshot eyes, slurred speech, and loss of balance.

Defendant also relies on the trial testimony of Deputy Wilson to support his assertion that he recanted his admission and told the police that someone else was driving that evening. Defendant asserts that Deputy Wilson testified that defendant complained repeatedly that Deputy Douglas should not have arrested him since he was not driving and that someone else was serving as a designated driver that night. Our examination of the record shows otherwise.

The testimony reveals that the prosecutor asked Deputy Wilson whether, during the course of the Breathalyzer exam, defendant made any statements to her that he was not driving the vehicle, and she responded "yes," that he kept asking her how he could be arrested for "DUI when he wasn't driving." The prosecutor asked her whether, other than by saying he did not drive, defendant suggested that someone else was driving or whether he gave her a name or a phone number of someone else who might have been driving, and Wilson responded, "no." It is clear that defendant never stated that there had been another driver; rather, he seemed confused by the fact that he had been walking rather than driving at the time of his DUI arrest. In any event, this conversation took place after defendant had been arrested, and Deputy Douglas was not involved. Thus, this claim is not relevant to the finding of probable cause.

## II. Beyond a Reasonable Doubt

Defendant next contends that the evidence was insufficient to prove him guilty of DUI. Defendant argues that the corpus delicti of the offense was not proved by the State. As stated, defendant admits on appeal that Deputy Douglas had probable cause to believe that he was intoxicated when the officer found him on the side of the road. However, defendant contends that the State failed to prove the driving element of the offense with evidence independent of or corroborating defendant's initial statement that he was driving the truck.

Section 11--501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11--501 (a)(2) (West 2006)) provides:

> "A person shall not drive or be in actual physical control of any vehicle within this
> State while:
>
> ***
>
> (2) under the influence of alcohol."

The offense includes two elements: (1) a defendant must be driving a vehicle; and (2) the defendant must be under the influence of alcohol.

Commonly referred to as the corpus delicti of the offense, the State must prove both elements in order to get a conviction. People v. Flores, 41 Ill. App. 3d 96, 100 (1976); People v. Toler, 32 Ill. App. 3d 793, 798-99 (1975); People v. Williams, 3 Ill. App. 3d 1036, 1039 (1972); People v. Jefferson, 1 Ill. App. 3d 484, 486 (1971). The corpus delicti cannot be proved by the defendant's confession alone. People v. Lambert, 104 Ill. 2d 375, 378 (1984); People v. Willingham, 89 Ill. 2d 352, 360 (1982); People v. Lueder, 3 Ill. 2d 487, 488 (1954). There must be some independent or corroborating evidence outside the confession that tends to establish that a crime occurred. If such

evidence tends to prove that the offense occurred and corroborates the defendant's confession, it may be considered, together with the confession, to establish the corpus delicti of the offense. Lambert, 104 Ill. 2d at 379. As noted by the supreme court in Willingham:

"The corroboration requirement stems from an attempt to assure the truthfulness of the confession and recognizes that the reliability of a confession 'may be suspect if it is extracted from one who is under the pressure of a police investigation--whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past.' [Citations.]" Willingham, 89 Ill. 2d at 359.

We must address defendant's contention within the familiar parameters for attacking a conviction for insufficiency of the evidence. When reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) People v. Collins, 106 Ill. 2d 237, 261 (1985), quoting Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); see also People v. Smith, 185 Ill. 2d 532, 541 (1999). The United States Supreme Court has stated that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318, 61 L. Ed. 2d at 573, 99 S. Ct. at 2788-89. This standard of review applies "regardless of whether the evidence is direct or circumstantial [citation], and regardless of whether the defendant receives a bench or jury trial [citation]." People v. Cooper, 194 Ill. 2d 419, 431 (2000). We will not

retry a defendant when considering a sufficiency of the evidence challenge. Smith, 185 Ill. 2d at 541.

The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the jury that saw and heard the witnesses. Smith, 185 Ill. 2d at 541-42. Accordingly, a jury's findings concerning credibility are entitled to great weight. Smith, 185 Ill. 2d at 542. That a jury accepted the veracity of certain testimony does not guarantee reasonableness, however. A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. Smith, 185 Ill. 2d at 542.

Defendant contends that, because neither Deputy Douglas nor any other witness, aside from his own, ever saw him in or even near the truck, the driving element has not been proved. It is well established that observation of a defendant in the act of driving is not an indispensable prerequisite for a conviction. People v. Foster, 138 Ill. App. 3d 44 (1985). The driving element may be proved by circumstantial evidence alone.

In City of Marquette Heights v. Clarkson, 64 Ill. App. 3d 162 (1978), the defendant was not found in the driver's seat of the car, although he admitted on two occasions to being the driver. At trial, he denied his admissions. However, the testimony of an eyewitness who had seen him climb from the driver's seat to the backseat of the car was held sufficient to corroborate his earlier, more credible admissions and prove that the defendant was in fact the driver of the car.

In People v. Garnier, 20 Ill. App. 2d 492 (1959), the only evidence that the defendant had driven the car while intoxicated was that he was found seated in the car, which was illegally parked some 40 blocks from the place where he had been drinking a short time before. Although there was

no direct evidence of his having driven the car, the appellate court found the inference that he had driven the car sufficiently strong to prove him guilty beyond a reasonable doubt.

In People v. Mundorf, 97 Ill. App. 2d 130 (1968), and People v. Schulewitz, 87 Ill. App. 2d 331 (1967), the defendants were found alone and asleep or passed out behind the steering wheels of their respective cars that were stopped in the middle of the highway. In Mundorf, the defendant and his wife testified that the wife had driven the car to the shoulder of the road and that there she had abandoned him. The trial judge found it difficult to believe that the defendant's wife drove the car, parked it on the shoulder of the tollway, left the car and her husband about 2 a.m., and then set out to walk home, in high-heeled shoes, via the tollway, a distance of one or two miles. Even if she were angry with her husband, the appellate court found, it did not seem reasonable that she would leave the car and her husband asleep in it and start to walk home at that hour of the night. Mundorf, 97 Ill. App. 2d at 135. The court in Schulewitz found it reasonable to assume that, when a car is found stopped in the middle lane of a busy thoroughfare and a person is found asleep or unconscious behind the wheel, sitting in the driver's seat, with no one else present, that person drove the vehicle to its present location. Schulewitz, 87 Ill. App. 2d at 337.

Similarly, in People v. Toler, 32 Ill. App. 3d 793 (1975), a law enforcement officer, Officer Milam, contradicted the defendant's version of events, and the court held the evidence sufficient to prove that the defendant was driving the car while intoxicated. Although the officer did not see the defendant driving the car, he did see the car being driven on a public highway. Furthermore, no one other than the defendant was found in or near the car, and no one was seen entering or leaving the car. Although another officer, Officer Ward, testified that the defendant had told him that he had been parked along the road for three hours, the testimony of Officer Milam was that the car was

driven and parked there less than two minutes before he reached the car. The jury could have believed or refused to believe Officer Milam's statement. It was for the jury to weigh the evidence and determine the credibility of the witnesses. The court felt that "the evidence of the defendant's driving, although circumstantial, was sufficient to exclude every reasonable hypothesis of [the] defendant's innocence." Toler, 32 Ill. App. 3d at 800.

Also, in People v. Jendrzejak, 98 Ill. App. 2d 313 (1968), the trial court did not err in rejecting the defendant's testimony, which contradicted his earlier admission of driving the vehicle in question. In Jendrzejak, the defendant contended that the State failed to meet its burden of proving beyond a reasonable doubt the corpus delicti. He argued that, since both he and his wife testified that he had not driven the car on the night in question and the only evidence that he did drive the car was his statement to the investigating officer, the evidence did not support the conviction. Jendrzejak, 98 Ill. App. 2d at 317. The appellate court found that the testimony of the defendant and his wife must first be considered in light of their interest in the outcome of the case, and it noted that the trial judge made an express finding that he did not believe either of them. The appellate court further noted that their testimony was contradicted by the officer's testimony of the defendant's admission, which the defendant did not deny having made. Further, it was inherently improbable that a husband, whose wife had just driven his car into a ditch and left him there with the car around 2 a.m., would not have mentioned the incident to an investigating officer, either at the scene or in the lengthy conversations that ensued at the police station. Under these circumstances, the appellate court found that "it was not error for the trial judge to disbelieve and totally disregard the testimony of [the] defendant and his wife." Jendrzejak, 98 Ill. App. 2d at 317-18.

The defendant argued that, even if the defense testimony was disregarded, the corpus delicti was not established since the only evidence that he drove the car was the officer's testimony concerning the defendant's admission. The court held "that the evidence corroborating a confession or admission need only consist of facts or circumstances tending to confirm and strengthen it." Jendrzejak, 98 Ill. App. 2d at 318. The court stated:

"Without regard to the evidence of defendant's statement, the facts and circumstances in evidence tended to prove--although, let us say, not beyond a reasonable doubt--that defendant drove the car. The car had recently been driven into the ditch and the owner was present. In a civil case, where the quantum of proof is the preponderance of the evidence, a motor vehicle is presumed to have been driven by its owner. [Citations.] This presumption is founded in large part on the high probability that the underlying inference is correct. By analogy, the facts and circumstances presented by the case on appeal are sufficiently persuasive to support the inference that defendant was the driver of the car. Thus, there is evidence which tends to strengthen and confirm the admission." Jendrzejak, 98 Ill. App. 2d at 318-19.

The court further found the inference that the defendant had driven the car sufficiently strong to establish guilt beyond a reasonable doubt. Jendrzejak, 98 Ill. App. 2d at 319.

In light of the case law, we turn to Lipford's testimony that defendant did not drive the truck on the night in question and defendant's statement to Deputy Douglas. It is clear that the jury found Deputy Douglas's testimony and observations regarding defendant to be credible and discredited defendant's witness, Lipford. Her testimony must be considered in light of her interest in the case, as defendant's friend. Moreover, Lipford's testimony, that she was traveling to her mother's home

at 3:30 in the morning to help her move and then left an inebriated friend alone with the keys to the truck, was inherently unbelievable. The jury could have believed or refused to believe Lipford's statements. It was for the jury to weigh and determine the credibility of the witnesses.

Defendant asserts that there was no independent or corroborating evidence presented at trial that could support defendant's initial admission that he was the driver of the truck. He cites Foster to support his assertion. We disagree with defendant's assertion and find Foster distinguishable from the instant case.

In Foster, the defendant was observed in the passenger seat of a car that was found off the highway with its rear wheels suspended over a culvert. The defendant twice told an officer at the scene that he was the driver of the car. While at the police station, the defendant recanted his admission. At a bench trial, the State presented the testimony of two officers who were at the scene and the results of a breath test. Based on the location of the car and the defendant's admission, the lower court concluded that the defendant was the driver of the car. Foster, 138 Ill. App. 3d at 46. This conviction was reversed. Foster, 138 Ill. App. 3d at 46-47. The Appellate Court, Third District, noted that the defendant's admission and later recantation, without more, established only that the defendant's contradictory statements were equivocal at best. Foster, 138 Ill. App. 3d at 46-47. In addition, the court specifically pointed to the fact that the trial judge believed that the location of the car, the defendant's admission, and the later arrest were sufficient to establish the corpus delicti of the offense. As the appellate court noted, these facts did not relate to the defendant's initial admission of driving. The undisputed facts were that the defendant was on the passenger side of the car. Furthermore, no evidence of vehicle ownership was presented at trial. Foster, 138 Ill. App. 3d at 46-47.

We find the present case dissimilar to Foster. Here, defendant was found approximately one-half mile from where his truck ran out of gas, walking along Route 20 in an inebriated state at 4 a.m. His eyes were bloodshot, his speech slurred, and he staggered as he walked. He admitted to Deputy Douglas that he drank before he drove the truck and that he was alone. Even after defendant had walked a half mile along Route 20 and after being driven back to the truck, he failed the field sobriety tests. He may have purposely averted the Breathalyzer test at the jail. Defendant admitted that the keys to the truck were in his pocket, although he would not identify which one of a large number of keys was the key that operated his truck. No one else was present at or near the area where the truck was located. The incident occurred in a rural area very early in the morning. At the time Deputy Douglas saw the truck, the passenger seat was covered by a number of papers and folders, a sweatshirt, and other items, making it uncomfortable for anyone to sit on. Lipford, whose testimony the jury disregarded, did not recall any papers or a sweatshirt in the truck that night. Moreover, defendant never claimed after he was arrested that someone else was driving the truck. Rather, he appeared to be asking how he could be arrested for DUI when he was not driving the truck at the time of his arrest. Based on the evidence, a reasonable inference would be that defendant drove the truck to the spot where it ran out of gas.

Defendant argues that his statement that he had been drinking before he drove is "short on specifics." He asserts that it does not state when he was allegedly drinking, how much he drank, whether he was under the influence of alcohol when he was allegedly driving, how much time transpired between the drinking and the driving, or whether he was drinking after he allegedly drove the truck. Defendant admitted that he was drinking before he drove the truck. Deputy Douglas testified that defendant did not pass the field sobriety tests, which were not given to him until Deputy

Douglas drove defendant to the truck, after defendant had walked one-half mile from the truck. In addition, defendant continued to exhibit symptoms of intoxication at the jail around 5 a.m., one hour after he was picked up by Deputy Douglas. Deputy Wilson observed that defendant exhibited bloodshot eyes, slurred speech, and a staggered walk and that the correctional officers almost had to hold him up as he walked. Furthermore, neither side admitted any evidence of alcohol or alcohol consumption at the scene where defendant was found walking or where the truck was located. Although defendant had testified at the hearing on the motion to quash and suppress that he had consumed alcohol after he left his truck, no such evidence was presented at trial.

We find defendant's reliance on People v. Miller, 23 Ill. App. 2d 352 (1959), and People v. Williams, 3 Ill. App. 3d 1036 (1972), to be misplaced. In Miller, the defendant testified that he had left the scene of the accident to have several drinks. Therefore, the court could not conclude that the defendant was intoxicated at the time he was driving. In Williams, the officer did not see the defendant until an hour and a half after the defendant had been driving, and the evidence of the defendant's intoxication was marginal. Accordingly, we reject defendant's arguments and find that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of driving under the influence of alcohol.

### III. Jury Instruction

Defendant last claims that the jury was given improper instructions on driving under the influence, which included the possibility that defendant was either driving or "in actual physical control" of the vehicle. He asserts that there was no issue of "actual physical control" and that this portion of the instructions likely confused the jury. Defense counsel argued that the jury could be misled into believing that a person has physical control and is guilty of DUI by merely riding as a

passenger and directing the driver. Over objection, the trial court gave the following instruction to the jury:

> "A person commits the offense of driving under the influence of alcohol when he drives or is in actual physical control of a vehicle while under the influence of alcohol."

See Illinois Pattern Jury Instructions, Criminal No. 23.13 (3rd ed. 2000) (hereinafter IPI Criminal 3d).

> "To sustain the charge of driving under the influence of alcohol, the State must prove the following propositions:
>
> First Proposition: That the defendant drove or was in actual physical control of a vehicle; and
>
> Second Proposition: That at the time the defendant drove or was in actual physical control of a vehicle, the defendant was under the influence of alcohol.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 3rd No. 23.14.

The trial court also gave the following definition instruction to the jury:

"The phrase 'actual physical control' means that the defendant was in the vehicle and in a position to exercise control over the vehicle by starting the engine and causing the vehicle to move."

See IPI Criminal 3rd No. 23.43.

"The function of jury instructions is to convey to the jury the law that applies to the evidence presented." People v. Herron, 215 Ill. 2d 167, 187 (2005). "Jury instructions should not be misleading or confusing [citation], but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them." Herron, 215 Ill. 2d at 187-88.

The definition instruction given to the jury explained that defendant had to be in the vehicle and able to start the engine and cause it to move to be in actual physical control of the vehicle. This instruction addresses the possibility that defendant had been a passenger who was left alone and could start the engine and cause the vehicle to move. Therefore, we do not find that the trial court abused its discretion in including the phrase "actual physical control" in the instructions.

Based on the preceding, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.